### WHISONANT *ET AL*. v. BELUE *ET AL*.

#### (121 S. E., 360)

1. Elections—Proceeding Contesting Municipal Election Held an Action Triable in County in Which Municipality Located.— A proceeding to require defendants to show cause why a municipal election held in a town in Cherokee County should not be declared void for illegality and fraud *held* an action and not a proceeding in *certiorari;* hence the defendants had the right to trial in Cherokee County, and the Circuit Court of Spartanburg County had no right, over defendant's objection, to try the case.

2. Certiorari—Heard on Record Below.—*Certiorari* is heard on the record below, and not on the record supplemented by petitioners.

Before Johnson, J., Cherokee, April, 1923. Reversed and remanded.

Proceeding by C. W. Whisonant and others against J. W. Belue and others. From an order and ruling favorable to plaintiffs, defendants appeal.

The order of the Circuit Court follows:

The above-entitled matter came on to be heard before me at chambers at Spartanburg, pursuant to a rule (in the nature of a writ of *certiorari*) issued by me on April 7th, requiring defendants to show cause why a municipal elec-

tion held in the Town of Blacksburg, Cherokee County, March 27, 1923, should not be declared null and void for irregularity and fraud.

The defendants appeared specifically for the purpose of demurring to the jurisdiction of the Court, and, in substance, made the following objections:

(1) That the controversey was an action under section 466 of the Code of Procedure, and that, under the provisions of section 468, the same could maintain only in the event that the state were a party thereto.

(2) That the Court had no jurisdiction at chambers, either within or without Cherokee County, to hear and determine an action brought under section 466 of the Code of Procedure.

(3) That the Court had no power or authority to direct a trial of the issues in controversy upon affidavits, the contention being that this was an ordinary civil action brought under section 466 of the Code of Procedure.

(4) That the Court had no power or authority to enjoin the defendants from exercising their duties and transacting the business of the Town of Blacksburg, as mayor and aldermen thereof, for the reason that the plaintiffs had an adequate remedy at law, and the Courts are not justified in exercising equitable authority to suspend a municipal government.

The verified pleading upon which my order was issued was attached to a summons, and, upon the back thereof, as well as in the caption, it was designated as a complaint. The pleading in question, however, set forth all facts and prayed for the relief desired in the same manner that would have been employed had it been denominated a petition, and since, under our Code of Procedure, a plaintiff is entitled to any relief appropriate to the pleadings, I construed the same as a petition for a writ of *certiorari*.

By the order in question, the town council of Blacksburg was enjoined, pending the hearing before me on April 12th,

from performing any acts or exercising any authority as a municipal corporation. At the commencement of the hearing before me I announced that it was my opinion that I had no authority to enjoin the old council, and I am now convinced that I had no such authority. This portion of my order, therefore, is revoked, and the council in existence prior to the election of March 27th should continue to function until a new council is duly and legally elected.

Grounds 1 and 2 of the demurrer (as I have enumerated them herein) are overruled, for the reason that this is not an action to try title to office under sections 466–468 of the Code of Procedure. The petition did not seek to have any candidate declared to be mayor or alderman, but simply sought to have the election of March 27, 1923, declared null and void.

It appears that a municipal election was held in Blacksburg on March 27, 1923, in which J. F. Belue and C. W. Whisonant were candidates for mayor. J. F. Belue was the then incumbent of the office, offering to succeed himself, and the managers reported Belue elected by a vote of 178 to 85 for Whisonant. The verified pleading, which I shall designate as a petition, was brought in the name of C. W. Whisonant and other interested citizens against the town council of Blacksburg as it existed prior to the election of March 27th. The proceeding was in reality a writ of *certiorari.* Counsel for respondents took the position that the affidavits to be used at the hearing had not been served upon them. I do not think it was necessary for petitioners to serve on respondents anything other than the verified petition upon which the hearing was to be had; but, as matter of fact, it appears that either one or two days before the hearing the affidavits on which petitioners relied were sent by registered mail to the law firm of Messrs. Butler & Hall, the attorneys representing respondents.

Among the affidavits used at the hearing was one purporting to be signed by 166 voters of Blacksburg, who

alleged that, in the municipal election of March 27th, they voted for C. W. Whisonant. In serving this affidavit upon the attorneys in the manner and at the time stated, the names of these purporting to sign the affidavits were not set out, but the body of the affidavit was, and immediately following the affidavit there appeared in parenthesis these words: "Signed by 174 voters." I do not think that counsel for respondents could have been misled or could have been prevented from making proper return, or that they were taken by surprise by the failure to set out these names, even if it were necessary (which I do not think is the law) that the affidavits, other than the verified petition, should have been served upon them. All of the other affidavits, with the names of deponents, were fully set out and served.

Counsel for respondents took the further position that the acts of the old council could not be certified since the town council was not the board of canvassers for the return of the municipal election. I cannot agree with this contention. Section 2919, Vol. 1, Code of 1912, provided:

"Immediately upon the closing of the polls, the managers shall proceed to count publicly the votes cast, and shall continue such count until the same is completed, and make a statement of the whole number of votes cast in such election, together with the number cast for each person voted for, for mayor and aldermen, upon the completion of which they shall transmit such statement to the town council of such town, and in case there be no town council they shall proclaim the election and transmit a copy of such statement to the clerk of the court of the county wherein such town is situated, and notify the parties elected of their election; and the said mayor or clerk of court shall, immediately upon the receipt of such statement or report of the managers, open and publish the same by announcing the whole number of votes cast for each person voted for as mayor and aldermen. The person securing the highest number of votes

for mayor shall be declared duly elected to that office, and the persons receiving the highest number of votes for aldermen, in number equal to the number of aldermen to be chosen, shall be declared duly elected to that office."

I find no other provision for the canvassing of returns of municipal elections in towns the size of Blacksburg, which, it was conceded at the hearing, has a population of more than 1,000 and less than 5,000 inhabitants, and it will be observed that Section 2919 provides specifically that the mayor shall open and publish the statement of the managers, and that the person securing the highest number of votes for mayor shall be declared duly elected to that office, and the persons receiving the highest number of votes for aldermen shall be declared duly elected to that office. I must necessarily conclude, therefore, that the town council in municipalities of the size of Blacksburg constitute the board of canvassers in municipal elections, and that the writ in this instance was properly directed to the town council.

Act No. 503 of the Acts of the General Assembly of 1922 provides that "The judges of the court of common pleas shall have power at chambers to grant writs of * * * *certiorari* * * * ; and * * * to hear and determine any matter not properly triable before a jury, and the persons, respectively, shall have the same right of appeal as if the decision was made in open Court." It appears, therefore, that the Court of common pleas unquestionably has the power at chambers to hear and determine writs of *certiorari,* since it cannot be contended that the same are triable before a jury.

Since the decision in *Rawl et al. v. McCown et al.,* 97 S. C., 1, it cannot be contended that the State is a necessary party to the proceeding on petition for writ of *certiorari,* the Court holding specifically that "where the private or property rights of the citizen are invaded or threatened by illegal action of a public party or board, he is entitled to relief, and the courts will not deny him a remedy. The

32—S. C. R., 127.

weight of authority in this country is that those rights which, in England, were originally prerogative rights, and issued only at the instance of the Crown, have lost their prerogative character, and now belong to the courts to be used as other process in the enforcement of private rights and the prevention of private wrongs. In such cases the State is not a necessary party."

Upon the overruling of defendants' demurrer, Mr. Hall, of the counsel for the defense, moved the Court to refer the matter for the taking of testimony on the issues involved, contending that the Court had no authority to determine a controversy upon affidavits. My order of April 5th allowed plaintiffs and defendants to submit affidavits, and the defendants were fully advised thereby. The motion for a reference being overruled, the defendants withdrew from the hearing without asking leave to file a return or answer, whereupon I directed the petitioners to proceed to submit their affidavits. There was nothing in the order complained of restricting the right to swear and examine the witnesses before the Court, but each side, by the terms of the order, was permitted to use affidavits, if desired.

It is not necessary to go into the contents of the several affidavits in detail, it being sufficient to state that they averred the following facts:

(a) Although the town council had declared J. F. Belue elected Mayor over his opponent, C. W. Whisonant, by a vote of 178 to 85, 166 qualified electors of said town swore that they voted in the election of March 27th, and that they cast their ballots for C. W. Whisonant.

(b) Approximately ten voters placed some mark of identification upon their ballots, but, when the ballots were examined by Messrs. N. W. Hardin, R. A. Dobson, N. H. Moss, and D. A. Thompson, after the ballot box and records had been delivered to the clerk of court pursuant to the order of this Court, not one of such ballots was to be found in the ballot box.

(c) Between the hours of 12 o'clock noon, and 1 o'clock p. m., while the election was in progress, J. F. Belue, candidate for Mayor, was in charge of the ballot box, with no one present except R. K. Smythe, one of the managers; that J. F. Belue actually administered the oath to several voters who cast their ballots during this time; and that the said Belue was actively in charge of the ballot box.

(d) That during the afternoon, prior to the closing of the polls, the said J. F. Belue offered to wager that he had been elected, though there is nothing to show that he actually placed any wagers. However, one of the affidavits averred that Francis Belue, a brother of J. F. Belue, wagered $200.00 that the latter would be elected Mayor.

(e) J. F. Belue stated in a public place in Blacksburg that he would retain the office of Mayor as he had the town treasury behind him, and could keep the matter in the courts indefinitely.

(f) That in the count of the ballots, when the bottom of the box was reached (supposedly the votes cast during the morning), of 88 ballots counted in succession 85 were for Belue and only three for Whisonant, and it appeared that practically all of these particular ballots were scratched with the same pencil and in the same manner.

(g) The books of registration were not opened until February 26th, only 29 days prior to the election; were kept open only 20 days, and then filed with the Town Clerk. The statute required that in a general election for Mayor and Aldermen, such as was the election in question, the books of registration shall be opened 90 days preceding the election.

On the morning after the election, about 8:30 o'clock, Messrs. J. F. Belue and two of the council met and declared themselves and certain Aldermen elected to constitute the new council. Certain citizens appeared before the council, and protested the election, but the council refused to set it aside, and from this refusal emanates the writ of *certiorari.*

After hearing the affidavits above outlined, and which were not controverted, I am of the opinion that sufficient irregularity and fraud have been shown to vitiate the election. *Wright v. Board of Canvassers,* 76 S. C., 588; 57 S. E., 536. *State v. Board of Canvassers,* 86 S. C., 457; 68 S. E., 676.

It is, therefore, ordered, adjudged, and decreed, that the municipal election as held in the Town of Blacksburg on March 27, 1923, be, and the same is hereby, declared fraudulent, null, and void; and that, pending another election, or the doing of such things as may hereafter be ordered by the Court or done by the old council of the Town of Blacksburg, the town council of said town be, and hereby is, declared to be the town council of said town, and is directed to do all acts and perform all duties required of town councils until their successors have been elected and qualify for office.

*Messrs. Butler & Hall,* for appellant, cite: *Action should be tried as other civil actions in county where defendants reside:* 33 S. C., 612; 66 S. C., 1; 67 S. C., 237; 80 S. C., 69. *Act of 1922 made no change in Civil Code 1912, Sec. 3833. Proceeding of certiorari must be tried in county where defendant resides:* 50 S. C., 558; 70 S. C., 288; 34 S. C., 194. *Proceeding in certiorari:* 34 S. C., 194; 2 Hill, 370; 54 S. C., 556; 76 S. C., 395; 112 S. C., 147. *Conduct of election is left to managers:* 1 Civil Code 1912, Sec. 2919; 23 S. C., 517. *Affidavits must be served with notice of motion:* 28 Cyc., 11. *Certiorari originally was used only to review acts of inferior tribunals:* 36 S. C. L., 29; 24 S. C., 363; 12 S. C., 111; 36 S. C., 125; 24 S. C., 519. *Later extended to embrace errors of law and facts when unsupported by evidence:* 86 S. C., 451; 97 S. C., 484; 102 S. C., 256; 102 S. C., 302.

*Messrs. Dobson & Vassey* and *John R. Hart,* for respondent, cite: *Town Council declares result of election:* 1 Civil Code 1912, Sec. 2919. *Member of the board who is*

*a candidate is disqualified from passing on election:* 113 S. C., 64. *Fraud will authorize interference by certiorari:* 49 How. Pr., 165. *Evidence outside of record permissible to show fraud:* 11 C. J., 202. *Summons unnecessary for writ of certiorari:* 62 S. C., 545; 70 S. C., 375; 55 S. C., 275; 72 S. C., 578; 70 S. C., 277; construction of 32 Stat., 903; 50 S. C., 562; 34 S. C., 200; 49 S. C., 386. *Any citizen taxpayer may maintain certiorari proceedings:* 97 S. C., 1. *Writ properly returnable at chambers:* 32 Stat., 903. *When irregularities will defeat an election:* 76 S. C., 588.

February 7, 1924.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The agreed statement in the case reads:

"This action was commenced by the plaintiffs on the 7th day of April, 1923, by the service of summons, complaint, and order upon the defendants, as shown by the pleadings set out in the case. The nature of the action being an issue, the pleadings are set out in full. A bond was attached to original complaint, but no copy served on defendant, but the complaint was verified.

"On the day required by the order or rule to show cause, to wit, April 12th, the attorneys for the defendants appeared and made a written return objecting to the jurisdiction of the Court and the method of trial, as shown by the return printed in the case.

"No affidavits or copies of affidavits were served with the summons and complaint, but on April 10th the attorneys for the defendants received by mail alleged copies of affidavits, numbered herein from 1 to 13 inclusive. The original of No. 5, purporting to be signed by D. A. Thompson, filed in the clerk's office, fails to show that D. A. Thompson signed the same.

"At the call of the rule before the judge at Spartanburg, S. C., on the night of April 12, 1923, the defendant's

attorneys filed the written objections, and protested against the trial of the cause on its merits, claiming the usual rights in civil actions of going to trial on the complaint and answer, and having the testimony of witnesses taken in open Court, to give the defendant the right of civil action in the nature of an action of *quo warranto* under section 466 of the Code of Civil Procedure 1912.

"His Honor, after argument, construed the action as a proceeding for a writ of *certiorari,* holding that the complaint answered as a petition; that he had authority to try the cause on affidavits; and that it was not necessary that the plaintiffs should have served the affidavits on the defendants at the commencement of the action, since the complaint apprised the defendants of the fact that plaintiffs had such affidavits, etc.

"Upon the Court so ruling, defendants' attorneys withdrew from further participation, except as mere auditors.

"His Honor thereupon proceeded with the trial of the cause on the merits, having allowed the plaintiffs at the outset of the hearing to amend their complaint, and allowed the introduction of additional affidavits of which defendants had no notice, and which are referred to in the case as Nos. 14, 15, and 16, and 17.

"On April 24, 1923, his Honor filed an order in the cause, which is set out in the case. From this order and all rulings of the Court the defendants gave due notice of intention of appeal."

The first and only question proper to be considered, in the view this Court takes of this case, is the question of jurisdiction. If the Court had no jurisdiction, any other findings are a nullity.

This is an action and not a proceeding in *certiorari,* and the defendants had the right to be tried in Cherokee County, and the Court had no jurisdiction in Spartanburg county to try the case on its merits. The respondents claim that it is a mere question of names and not

material. This cannot be sustained. The determination of the nature of the proceedings determined the place of trial, and also the method of trial, and both are substantial rights.

If the proceeding were called *certiorari,* it would not save this case from reversal, as *certiorari* is heard on the record below, and this case was tried on the record supplemented by the petitioners.

The judgment is reversed, and the case is remanded to Cherokee County for trial.

MESSRS. JUSTICES WATTS, COTHRAN and MARION concur.

MR. CHIEF JUSTICE GARY did not participate.