STATE, *EX REL.* WHISONANT *ET AL.* v. BELUE, MAYOR, *ET AL.*

(136 S. E., 641)

1. QUO WARRANTO—THAT QUO WARRANTO WAS BROUGHT WITHOUT PERMISSION AND NOT IN NAME OF STATE HELD NOT TO REQUIRE DISMISSAL: PERMISSION BEING GRANTED NUNC PRO TUNC AND PLEADINGS AMENDED.—That action of *quo warranto* was not brought in name of state nor permission of Circuit Judge obtained before suit, *held* not to necessitate dismissal, and action of Court in granting plaintiffs' permission *nunc pro tunc* to bring action and to amend summons and complaint by making state a party *ex rel.*, the plaintiffs was not error.

2. JUDGMENT—UNAPPEALED FROM DECREE, IN PROCEEDINGS BY DEFEATED CANDIDATES FOR OFFICES OF MAYOR AND ALDERMEN AGAINST FORMER INCUMBENTS DECLARED ELECTED, HOLDING ELECTION VOID AND THAT DEFENDANTS WERE HOLDING UNDER OLD COMMISSIONS, HELD CONCLUSIVE.—In *quo warranto* proceedings, defeated candidates for office of mayor and aldermen of city against former incumbents who had been candidates for re-election, decree not appealed from holding election fraudulent and absolutely void, and further that defendants were not claiming under void election, but were holding over under their old commissions until their successors were elected and qualified, *held* conlusive on merits of proceeding.

3. QUO WARRANTO—COURT IN QUO WARRANTO PROCEEDINGS HELD WITHOUT AUTHORITY TO ORDER NEW MUNICIPAL ELECTION ON DETERMINING FORMER ELECTION WAS VOID (CIV. CODE 1922, § 4540).—In *quo warranto* proceedings by defeated candidates for offices of mayor and aldermen, Court, finding that election was fraudulent and void and that defendants were holding over under old commissions, *held* without authority to order a new election, particularly in view of statutory duty of holdover council immediately on annulment of election to fill vacancies under Civ. Code. 1922, § 4540.

4. QUO WARRANTO—DEFENDANTS, ADJUDGED GUILTY OF CONTEMPT AFTER DEPOSIT OF FINES IMPOSED WITH CLERK, HELD NOT ENTITLED TO APPEAL.—Defendants in *quo warranto* proceedings, adjudged in contempt for failure to put in motion machinery for new municipal election after depositing amount of fines imposed with clerk, *held* not entitled to appeal from such contempt order.

Before SHIPP, J., Cherokee, March, 1924. Appeals dismissed.

*Quo warranto* proceeding by the State, on the relation of C. W. Whisonant and others, against J. F. Belue, as Mayor of the Town of Blacksburg and others. From various orders, defendants appeal.

The following are the order of Judge Shipp appealed from, the decree of Judge Bonham, and defendants' exceptions on appeal from order of Judge Shipp:

"ORDER OF JUDGE SHIPP

"This is an action in the nature of *quo warranto,* heretofore commenced by plaintiffs against the defendants by the service of summons and complaint, and the defendants have answered to the merits of the action. Upon the call of the case at the March term, 1924, of the Court of Common Pleas for Cherokee county at Gaffney, the plaintiffs moved for an order of reference, upon notice, and the defendants, upon notice, moved for a submission of issues to a jury, and also, upon notice, demurred to the complaint. Upon the agreement of counsel in the case, all these matters were marked 'Heard,' and were set for argument at Spartanburg.

"Accordingly, on March 27, 1924, the several matters were argued before me. The defendants demur to the com-

plaint (1) because the action was brought without the permission of a Circuit Judge, and (2) because the state is not made a party plaintiff. Both these grounds are sustained, as the Code plainly provides that these two things are necessary. The defendants having answered to the merits of the action, the issues are made up and could not be in anywise changed by an amendment making the state of South Carolina a party plaintiff, and by now consenting that the action should continue as thus amended. This I think is the proper thing to do under the liberal provisions of the Code as to amendments. No harm can possibly result to the defendants by such a course, and the action will then proceed under the proper forms of law, and it is so ordered.

"I overrule the motion to submit issues to a jury. The matters here involved are political matters, and the trial will probably be protracted and can be tried much more economically and freer from excitement and passion by trial before a referee. I will accordingly sign an order of reference, if the parties or their attorneys agree on some person to act as referee by April 10, 1924. Should they not so agree, I will appoint a referee and sign the necessary order. So let the pleadings be considered as amended as provided in this order, and let the cause proceed—as no new issues can arise.

"In order to protect the state of South Carolina, let the private persons constituting the plaintiffs file a bond in the sum of $300, conditioned to save the state harmless of costs in this cause. Let this bond or cash security be filed or deposited with the clerk of this Court on or before April 15, 1924."

## "DECREE OF JUDGE BONHAM

"December 24, 1924, his Honor, Judge J. W. De Vore made an order in the above-stated case, whereby the defendants were commanded to 'forthwith order and hold a

municipal election in the Town of Blacksburg for mayor and alderman, and one member of the board of commissioners of public works, after due advertisement and in the manner provided by law, and that the machinery for said election be put in motion within five days after the service of this or-der or decree upon the defendants, and that there be no fur-ther delay than is necessary for the holding of a legal elec-tion, as is provided by law.' It appears by the affidavit of H. H. Lockhart, deputy sheriff of Cherokee county, that he served certified copies of the decree of Judge De Vore on all of the defendants, except J. H. Rhyne, who is not now a resident of this state on December 24, 1924. It appearing by the affidavit of C. W. Whisonant, dated January 7, 1925, that he is one of the plaintiffs in the action above styled and is a resident of the town of Blacksburg; that no election has been ordered and no machinery put in motion for the calling of a municipal election in the town of Blacksburg, as pro-vided in the decree of his honor, Judge J. W. De Vore, of date December 22, 1924, although more than five days have elapsed since the service of a copy of said order on defend-ants. I issued a rule requiring the defendants to show cause before me at Chambers at Spartanburg, S. C., January 19, 1925, why they should not be attached for contempt for refusing to obey the order of Judge De Vore. On the call of the matter in open Court in Spartanburg, where I was then holding the Court of Common Pleas, plaintiffs' attor-neys moved to amend the rule by requiring that the rule be heard in open Court, which motion was granted, and the hearing was had in open Court at Spartanburg. The res-pondents for return to the rule ask that it be discharged for that: (1) They were not served with the affidavits upon which the rule was based. (2) That I am without juris-diction in contempt proceedings outside the county of Cher-okee, in which county all of the defendants reside. (3) That defendants have appealed from the order of Judge De Vore, which appeal acts as supersedeas of said order.

"1. I know of no rule of practice, and none has been cited to me, which requires service upon respondents of copies of the affidavits upon which a rule is issued. The affidavit is to satisfy the Court that a *prima facie* showing is made for the rule. Moreover, in this case, the rule itself sets forth substantially the contents of the affidavit upon which it is based, so that respondents were advised of all that the affidavit could show.

"2. This action, which culminated in the decree of Judge De Vore, was an action at law. Contempt proceedings therein are civil in their nature—'Civil contempts are those *quasi* contempts which consist in failing to do something which the contemnor is ordered by the Court to do for the benefit or advantage of another party to the proceeding before the Court.' *State v. Nathans,* 49 S. C., 207; 27 S. E., 52. May such contempt proceedings be heard at chambers? In the case of *Harmon v. Wagener,* 33 S. C., 487; 12 S. E., 98, cited in the *Nathans Case, supra,* 'Judge Fraser, at chambers, granted an order making absolute a rule to show cause why attachment should not issue for contempt.' In the *Nathans Case,* 49 S. C., 227; 27 S. E., 62, the Court said: 'In the case of *Klinck v. Black,* 14 S. C., 266 and *Pelzer, Rodgers & Co. v. Hughes,* 27 S. C., 408 (3 S. E., 781), attachment for contempt of Court in refusing to obey orders, were granted by a judge at chambers. The very nature of such cases, and the danger sought to be provided against, would seem to make it necessary that the remedy for disobedience should be as prompt and summary as the appointment itself.' Thus it would seem that, even if this hearing be construed to be one at chambers and not one in open Court, I have jurisdiction to entertain it. 'If the contempt consists in the refusal of a party to do something which he is ordered to do for the benefit or advantage of the opposite party, the process is civil, and he stands committed 'til he complies with the order. The order in such case is not in the nature of a

punishment, but is coercive to compel him to act in accordance with the order of the Court.'

"3. A more serious question is presented by the construction that the appeal from the order of Judge De Vore acts as supersedeas and stays all further proceedings in the case until the questions made by the appeal are heard and determined. Counsel for respondents plant themselves squarely on the provisions of the Code of Civil Procedure contained in sections 647 *et sequiter,* which are to the effect that an appeal from an order of final judgment suspends all proceedings till the appeal is heard, except in the cases enumerated; and that this case does not fall within the named exceptions; in other words, that the order of Judge De Vore is the final judgment in that proceeding, from which an appeal will lie, and the effect of the appeal is to stay all further proceedings till the appeal is heard. The argument is plausible. But 'in the very nature of the case,' it would be an anomalous situation if the peremptory order of the Court that a certain thing be done within a given period of time may be set at naught by giving notice of intention to appeal therefrom. The benefit to the successful litigant may be utterly lost by the delay thus brought about. I have found no cases in our reports dealing with the question of supersedeas as applied to the proceedings in mandamus. But there is the strong opinion of the late Mr. Justice Hydrick in the case of *Jennings v. Jennings,* 104 S. C., 245; 88 S. E., 527. In that case defendants had been enjoined from doing certain things. They disobeyed the order of the Court, and were ruled to show cause why they should not be attached for contempt. For cause they set up that they had appealed from the order of injunction which appeal suspended all proceedings in the case. The Supreme Court said 'An appeal from an order of injunction does not operate as a supersedeas. Such a doctrine would completely destroy the effectiveness of the remedy by injunction'—quoting *Klinck v. Black,* 14 S. C., 241; 2 High on Injunctions, § 1413. Further from

the same opinion: 'The orders of the Court even though erroneous, must be obeyed, until vacated or modified by competent authority'—quoting *Watson v. Bank*, 5 S. C., 159; *State v. Nathans, supra.* I can percieve no good reason why this argument does not apply with equal force to a case in mandamus as to one in injunction. In argument at bar it was asserted and not denied that, if the proceedings in this case be halted till the appeal from the order of Judge De Vore is disposed of, the time of the regular election of officers for Blacksburg will have arrived, and the order of Judge De Vore will become useless. Thus the process of the Court would be rendered nugatory.

"It appears that the defendant J. H. Rhyne was not served with the order of Judge De Vore; hence as to him this rule does not apply.

"It has been brought to the attention of the Court that the regular election for the town of Blacksburg is fixed for the fourth Tuesday in March, 1925, and that steps are being taken to hold that election. That it would interfere with the preparations for that election to hold the special election ordered by Judge De Vore. It could serve no good purpose to hold the special election now. I am satisfied that the appeal from the order of Judge De Vore was taken in good faith. In these circumstances it appears to be in the interest of justice that further proceedings under the order of Judge De Vore be stayed until the appeal is decided.

"It is therefore ordered and adjudged that the return of respondents to the rule is insufficient, and that the respondents, with the exception of J. H. Rhyne, are in contempt of Court: that for such contempt they and each of them shall pay the sum of $1; that further proceedings under the order of Judge De Vore, of date December 24, 1924, be stayed until the appeal therefrom is heard and determined. Let certified copies of this order be forthwith served on the respondents-defendants."

"Exceptions on Appeal from Judge Shipp

"(1) His Honor Judge Shipp, erred in not dismissing the complaint of the plaintiffs on the demurrer, for the reason that the action, having been commenced by private persons without first obtaining leave of a Circuit Judge, and without making the state a party, was without warrant of law, and could not be maintained, as the conditions required by law are conditions precedent.

"(2) His Honor, also erred in allowing the amendments, granting leave to maintain the action, and making the state a party where as he should have dismissed the complaint on the ground that the action was commenced without authority of law, and that the plaintiffs had not the capacity or right to bring the action without complying with the legal requirements of first obtaining leave, and making the state a party.

Exceptions on appeal from the decree and order of Judge De Vore."

*Messrs. Butler & Hale* for appellants, cite: *Civil action substituted for action in nature of quo warranto:* Code Civ Pro.. 1922, Secs. 775–794. *Terms of office of mayor and aldermen of Blacksburg:* Civ. Code, 1922, Sec. 4558. *Where question raised by appeal becomes academic appeal will be entertained to determine party liable for costs:* Ann. Cas., 1913 C, 1302; 32 Cyc., 1432. *Former appeal:* 127 S. C., 483. *Failure to obey injunction of Court without jurisdiction not contempt:* 67 S. C., 236; 49 S. C., 199. *When appeal stays proceedings below:* Code Civ. Pro., 1922, Secs. 657. *When appeal does not stay proceedings below:* Code Civ. Pro., 1922, Secs. 647, 651, 653 and 654. *Case distinguished:* 104 S. C., 242.

*Messrs. Bomar, Osborne & Brown* also for appellants.

*Mr. John R. Hart,* for respondents, cites: *When election will be set aside for illegal voting:* 76 S. C., 588. *Present suit is "an action":* 127 S. C., 483. *Civil action substituted*

*for action in nature of quo warranto:* Code Civ. Pro., 1922,. Sec. 779. *Same; judgment in such case:* Code Civ. Pro., 1922, Sec. 779. *Appeal from injunction not a supersedeas:* 104 S. C., 244. *Erroneous order of Court must be obeyed till set aside:* 49 S. C., 199; 5 S. C., 159.

*Messrs. Dobson & Vassey,* for respondents, cite: *Court acquiring jurisdiction may determine whole cause:* 11 Cyc. 677. *Nature of present suit:* 15 Cyc. 402. *Authority of Court to declare election void and order another:* 15 Cyc. 434.

August 20, 1926.

The opinion of the Court was delivered by Mr. JUSTICE COTHRAN.

At a municipal election held in the town of Blacksburg in March, 1921, the following officers were duly elected and qualified: Mayor, J. F. Belue; aldermen, D. P. Smith, Henry Jacumin, R. A. Putnam, and J. H. Rhyne. They held office under their commissions for two years and "until their successors shall have been elected and qualified."

In March, 1923, another election was held, at which there were two opposing tickets in the field. Upon one the candidates were: For mayor, J. F. Belue, for aldermen, D. P. Smith, Henry Jacumin, Ed. Turner, and E. L. Jones. It will be noted that Putnam and Rhyne of the old council were not candidates for re-election, Turner and Jones taking their places. Upon the other ticket the candidates were: For mayor, C. W. Whisonant; for aldermen, N. H. Moss, J. P. London, Wm. Gaffney,. and Tom Cobb.

The election was held on March 27, 1923 at which 263 votes were cast. The managers of the election reported to· the council that the vote for mayor was: Belue, 178; Whisonant, 85 (the Belue candidates for aldermen receiving practically the same votes). On the following morning after the election, Belue, Jacumin, and Smith, who were members.

of the old council and candidates for re-election, met and declared the election according to the report submitted to them by the managers of the election. It appears, however, that none of the candidates upon the Belue ticket qualified, owing to charges of serious irregularities in the election, and the old council, consisting of Belue, Jacumin, Smith, Putnam, and Rhyne, have been holding over under their commissions following the election in March, 1921, with the exception of Rhyne, who has removed from the state.

On April 7, 1923, the candidates upon the Whisonant ticket instituted an action against the members of the old council, by summons and complaint, setting forth in detail the grounds upon which they alleged that the election in March preceding was "illegal, fraudulent, and void," and that the defendants, the old council, have illegally usurped and unlawfully hold the offices of mayor and aldermen. The prayer of the complaint is that the defendants show cause before the Court why their action in reference to the election should not be "rescinded, reversed, and evidence taken concerning the same," that they be enjoined from transacting any municipal business pending a decision, and that all papers and documents referring to the election be turned over to the clerk of Court.

Upon the same day (April 7, 1923), the plaintiffs obtained an order from his Honor Judge Johnson of the Circuit Court, requiring the defendants to show cause before him at chambers at Spartanburg, on April 12, 1923, why the election of March 27, 1923, should not be declared null and void for irregularity and fraud. The defendants appeared at the appointed time and place, and among other objections contended that the action was one under Section 779 (Code Civ. Proc., 1922), a *quo warranto* proceeding, and that the Court had no jurisdiction at chambers, particularly outside of Cherokee county, to hear and determine it. His Honor overruled the objection, and considering the complaint as a petition for *certiorari,* on April 24, 1923, filed his decree

in which he adjudged that the election be declared fraudulent, null, and void. Upon appeal to this Court, in an opinion filed February 7, 1924 (127 S. C., 483; 121 S. E., 360), it was held that the proceeding was an action (presumably *quo warranto*), which could be tried only in Cherokee county. The decree was reversed, and the case was remanded to Cherokee county for trial.

In the meantime the defendants had served an answer and a demurrer to the complaint. In their answer they assert the validity of the election; they demurred upon the grounds that, considered as a *quo warranto* proceeding, the plaintiffs had not obtained permission of a Circuit Judge and that it should have been brought in the name of the state.

At March term, 1924, after the remittitur in the former appeal had been sent down, the case came up before his Honor Judge Shipp, presiding judge, at Gaffney. By agreement it was marked "Heard" and set for argument before him at Spartanburg. On March 27th it was argued, and, at a later date (the order in the transcript is not dated), he filed an order sustaining the demurrer of the defendants, but granting plaintiff's permission, *nunc pro tunc,* to bring the action and allowing the plaintiffs to amend the summons and complaint by making the state the party plaintiff *ex rel.* the plaintiffs, the Whisonant candidates. He then ordered a reference before W. W. Lewis, Esq., who took a mass of testimony and filed his report dated July 2, 1924, sustaining the charges of illegality and fraud in the election, recommending that a new election be ordered, and finding that the defendants were usurping the offices of mayor and aldermen.

Upon exceptions to the referee's report, the matter came up before his Honor Judge De Vore, presiding judge, at Gaffney, during the fall term, 1924. He filed a decree dated December 24, 1924, in which he confirmed the referee's report as to fraud, but held:

"I am of opinion that defendants are lawfully in office, as they do not claim under the last election, which is null and void, but under the previous one, when they were duly elected, and are holding over until their successors are duly elected and qualified, which has not been done, nor could it be done, as no election has been held since they were duly elected."

He further decreed:

"I cannot, however, agree with defendants' contention that this Court cannot order another or new election to be held. The section that defendants (plaintiffs?) rely on is: 'In every case judgment shall be rendered upon the rights of the defendant and also upon the rights of the party alleged to be entitled, or only upon the rights of the defendant, as *justice shall require.*' The last words underscored open a broad field and empower the Court to do what is just and right in the premises, and I think justice requires. a new order or another election to be held."

—which he accordingly ordered, the machinery therefor to be put in motion within five days. From this order the defendants gave notice of intention to appeal on December 26, 1924.

Early in January, 1925, the plaintiffs procured an order from his Honor Judge Bonham, then presiding in the Seventh circuit, requiring the defendants to show cause before him at chambers at Spartanburg, on January 19th, why they should not be attached for contempt of Court, in not obeying the order of his Honor, Judge De Vore, dated December 24, 1924, requiring them to put in motion the necessary machinery for a new election.

The defendants appeared at the time and place appointed and filed a return to the rule, in which they contended: (1) That no copies of the affidavits upon which the rule was issued had been served upon them; (2) that his Honor had no jurisdiction in contempt proceedings outside the county of

Cherokee where all of the defendants resided; (3) that no-
tice of intention to appeal from the order of his Honor Judge
DeVore, dated December 24, 1924, acted as supersedeas.
His Honor Judge Bonham overruled all of the objections of
the defendants, adjudged them in contempt, and imposed a
fine of $1 upon each. He, however, ordered that further
proceedings under the order of his Honor Judge De Vore,
dated December 24, 1924, be suspended pending the deter-
mination of the defendants' appeal from that order. Let
the order of his Honor Judge Bonham be reported (correct-
ing the date of his Honor Judge De Vore's order therein re-
ferred to: December 24, 1924, and not December 22, 1925).

Upon the filing of this order, the defendants gave notice
of intention to appeal, and deposited the amount of the fines
with the clerk of court, pending the appeal and subject to
the order of the Court. Thereafter the defendants moved
before his Honor Judge Bonham for an order rescinding his
contempt order and staying the execution of it pending the
appeal therefrom. The motion was refused.

The appeal from Judge Shipp's order:

1    The exceptions assigning error in this order are
overruled, for the reasons given by Judge Shipp in
his order.

The appeal from Judge De Vore's order:

2, 3    The referee found as a fact that the election was so
permeated with fraud as to render it absolutely void;
his report in this respect was confirmed by the de-
cree of his Honor Judge De Vore; no exception has been
taken to that finding. The persons declared elected in the
election of March, 1923, have obviously concurred in that
conclusion, as none of them have qualified, although declared
elected, and the old council have been holding over under
their commissions following the election of March, 1921;
the decree of his Honor Judge De Vore so holds, and there
has been filed no exception thereto upon this point. This is

conclusive upon the merits of the action as a proceeding in *quo warranto;* the action being against the members of the old council. The question of difficulty is whether or not his Honor Judge De Vore had the authority to order a new election. If this had been a contest between the persons who had been declared elected under the election of March, 1923, and those who were contesting that result and claimed the offices, there might have been some ground for sustaining the action of his Honor, Judge DeVore, though we doubt it; but, in a *quo warranto* proceeding against the members of the old council, holding over, the sole question at issue was whether they were usurping the offices, and that has been decided in the negative. In as much as the time has passed for the succeeding election in March, 1925, the question would be academic but for the order of his Honor, Judge Bonham, holding the defendants in contempt for not obeying the decree of his Honor Judge De Vore ordering a new election. It becomes necessary, therefore, to consider the validity of that portion of Judge De Vore's decree. As above indicated, the invalidity of the decree upon the point under discussion might well be sustained upon the ground that the proceeding being against the hold-over council, the only question at issue was their alleged usurpation of the offices, which the decree was determined did not exist.

Another insuperable objection to the validity of the order in this respect, is that at least two of the members of the new council, who were declared elected, are not parties to this proceeding, and, upon the question of ordering a new election, they are entitled to be heard.

But, assuming that the proceeding had been a contest between the alleged new council and the Whisonant ticket, who claimed to have been elected, the Court would have had the right, under Section 783 of the Code of Civ. Proc., 1922, to have determined, if such had been the fact, that the Whisonant ticket had been elected and were entitled to the offices,

if such had been within the purview of the proceeding. But the complaint does not ask this; it asks only that the election be declared void, and this has been determined in their favor, from which there has been no appeal. With the annulment of the election the rights of both factions under it disappear.

The effect of the annulment of the election was to declare that vacancies existed in the several offices. The ordering of a new election was the assumption of power in the Court to fill the vacancies thus created, for which we find no authority in the law. It became the statutory duty of the hold-over council, immediately upon the declaration of the annulment of the election, to fill the vacancies as provided for in Section 4540, Vol. 3, Code of 1922, and, if it had been brought to the attention of the Court in a proper proceeding that they refused or neglected to perform this plain ministerial duty, they could have been compelled by mandamus to do so. We find no statutory authority for the issuance of what was practically a writ of mandamus requiring the council to perform a statutory duty before they had refused or neglected to do so.

For the reason stated in the discussion of the appeal from the order of his Honor, Judge Bonham, however, the question of the invalidity of the order of his Honor Judge De Vore, is completely academic.

The appeal from Judge Bonham's order:

It appears that after the order of his Honor, Judge Bonham was passed the defendants paid to the clerk of court the fines imposed. The "case" states:

"Upon the filing of the order of Judge Bonham, the defendants gave notice of intention to appeal and deposited the amount of the fines with the clerk of court pending the appeal and subject to the order of the Court."

Under the case of *Batesburg v. Mitchell,* 58 S. C., 564; 37 S. E., 36, they had lost the right to appeal from that order. The syllabus is:

"A defendant convicted by town council of violation of municipal ordinance cannot appeal from the judgment and sentence of town council, after paying *under protest* fine imposed."

See also, extended note 18 A. L. R., 864.

We feel constrained to say that the attitude of those of the defendants, who were candidates for re-election, deserves the severest condemnation of this Court. The election, according to the facts found by the Referee confirmed by the decree of his Honor Judge De Vore, *and unappealed from,* was reeking with the most disgusting fraud; exactly whose does not appear except by strong inference. They were willing to accept the fruits of that fraud, and voted to ratify the report of the managers of election. The character of the election became by investigation, doubtless appreciated before, so malodorous that they adopted the subterfuge of repudiating what they had done, refusing to qualify under the new election, and holding on to the offices under their old commissions. They knew that, if the election was void for fraud the only ground which justified their refusal to qualify, that vacancies in the offices were thereby created which they were called upon to occupy under their old commissions until a new election could be had and their successors qualified, which under the law it was their duty to provide for; yet for two years, notwithstanding earnest demands and the order of the Court, which was at least suggestive and persuasive, they have defied the law and their plain duty, and by inexcusable tactics have accomplished their nefarious and threatened design to hold on to the offices until a new election shall have rendered the question academic.

The judgment of this Court is that the appeals from the several orders referred to be dismissed.

MR. CHIEF JUSTICE GARY, and MESSRS. JUSTICES WATTS, BLEASE, and STABLER, concur.