15551

KILLIAN *ET AL.* v. WILKINS *ET AL.*

(26 S. E. (2d), 246)

*Messrs. Hall & Saint-Amand,* of Gaffney, S. C. Counsel for Petitioners,

*Messrs. Wolfe & Fort,* of Gaffney, S. C. Counsel for Respondents,

June 15, 1943.

Mr. Associate Justice Baker delivered the majority opinion of the Court, with Circuit Judge J. Henry Johnson, Acting Associate Justice, filing a Concurring Opinion and Mr. Associate Justice Fishburne filing a Dissenting Opinion.

The opinion of the Court follows:

This proceeding, brought in the original jurisdiction of this Court, seeks a writ of mandamus compelling the respondents, as the holdover officers of the Town of Blacksburg, S. C., to arrange for and hold an election for the office of mayor and aldermen of said town.

The respondents first demurred to the petition of petitioners, and saving and reserving their respective rights under the demurrer, filed a return, and the matter was thus heard by the Court.

The first ground of the demurrer would be well taken if this action were in the Court of Common Pleas, but the jurisdiction of this Court is Statewide; hence this ground is overruled.

The second ground is also overruled under the authority of the case of *State ex rel. Harrelson v. Williams, Mayor,* 157 S. C., 290, 295, 296, 154 S. E., 164, 166, wherein Mr. Acting Associate Justice C. T. Graydon, in writing the opinion of the Court, stated:

"The further position is taken that, as the statute fixes the time for the holding of the election for mayor and aldermen, this court has no power to issue a mandamus requiring the election to be held on some other date. There is no question about the fact that this court does not have the power to change the date fixed by statute for a general election, but, where the election is held and is void or invalid for some

reason, the inherent power rests in some tribunal to remedy this defect. Suppose the town council of Mullins, upon whom the duty is placed by statute to hold the election, would refuse to hold it at the proper time. They could by this method perpetuate themselves in office. Suppose the mayor of the town council would die, could it be contended that no election could be held to fill this vacancy? There is no question about the proposition of law laid down by respondents that the town council of Mullins would have no right to arbitrarily change the date fixed by statute for the holding of the general election, but this court has power to compel an election where there is a vacancy, as in this case, and where an election is necessary to fill such vacancy."

The Town of Blacksburg has between one thousand and five thousand inhabitants and the time for the holding of the election for a mayor and four aldermen is fixed by statute for the fourth Tuesday in March every two years. Section 7446, Code of 1942. This section also provides for a primary election or elections to be held prior to the election to be held on the fourth Tuesday in March for the purpose of nominating a mayor and four aldermen.

In accordance with the statute law, a primary election was held in the Town of Blacksburg on January 26, 1943, at which time William Borders was nominated as alderman for Ward One, George Hampton, Jr., as alderman for Ward Two, and J. B. Quinn as alderman for Ward Four, they having received a majority of all the votes cast in their respective Wards. A second primary was held on February 9, 1943, which resulted in the nomination of Victor M. Roberts as mayor and W. C. Gaffney as alderman for Ward Three, they having received a majority of all the votes cast for their respective positions.

Thereafter, pursuant to the requirements of law, those charged with the responsibility therefor provided all the facilities for the general election to be held on the following fourth Tuesday in March. Said general election was duly

advertised and the registration books for the qualifying of voters were opened and kept open by the proper authorities for the requisite time preceding the time for the said general election. During the time allowed by law for registration for said general election no person registered and, as a result, there was no one in the Town of Blacksburg who was qualified to vote in the said general election. The managers for said general election were duly appointed, ballots were printed and supplied, bearing the names of the nominees for the respective municipal offices. The voting precincts on the day for the general election were kept open and available for the purposes of voting during the hours provided for by law. No one presented himself on the election day who had a registration certificate qualifying him to vote. As a result, no one voted at said general election.

There is no charge of fraud, default or neglect on the part of those whose duty it was to arrange for the election. The failure to elect a mayor and aldermen for said town resulted solely from the neglect on the part of the citizens of the Town of Blacksburg, which includes the petitioners, to qualify to vote by procuring the necessary municipal registration certificate.

The portion of Section 7446 of the Code of 1942, having reference to the election of officers for the Town of Blacksburg stems from Act No. 928 of the Acts of 1940, and provides for a primary or primaries to nominate the town's officers, divides the town into four wards and requires that one resident alderman be elected from each ward. Theretofore, the aldermen were elected at large, and at one general election. This being the first election held under the new law governing the election of officers for the town, and the only notice thereof being copies of the city ordinance governing the election which were attached to telephone posts in the town, but apparently not read by the citizens, the citizens and electors thus plead these facts as extenuating circumstances in mitigation of

their negligence. Incidentally, we may state that the notice of the election given was ample, possibly unnecessary. See *Phillips v. City of Rock Hill et al.,* 188 S. C., 140, 198 S. E. 604.

It appears that the holdover officers of the town consist of a mayor and three aldermen, and that all three aldermen reside in the same ward. The fourth alderman resigned and moved from the corporate limits of Blacksburg approximately six months prior to the date fixed by statute for the election of officers for the town under the Act of 1940.

When no election was had due to the fact, as aforesaid, that no elector within the town was a qualified voter, the town council, composed of the parties named as respondents herein, met and declared that there had been no election.

Thereafter, and prior to the bringing of this proceeding, a number of the electors and citizens of the Town of Blacksburg petitioned the holdover officers to again make provision for the electors to obtain a municipal registration certificate, and to call another election, but this they have in effect refused to do. T. D. Wilkins, the holdover mayor, and strange to relate, J. B. Quinn, a holdover alderman and the primary nominated alderman from Ward Four, absenting themselves from the called meeting to consider the advisability of providing for another election, thus rendering impossible any action on the part of the holdover town council. V. M. Roberts, the nominee-mayor, and Harry McDaniel, a holdover who wishes to be relieved of his duties as alderman, are sympathetic with the electors and citizens of the town and desire another election. It is but fair to Mr. Wilkins and Mr. Quinn that we record here that they have been advised that the town council, under the circumstances, has no legal right or power to provide for and call another election.

> The effect of the annulment of an election is to declare that a vacancy exists in the office for which the election was attempted to be held, if such annulled

election was attempted to be held at the time designated by law. *State ex rel. Whisonant et al. v. Belue, Mayor,* 138 S. C., 393, 136 S. E., 641.

In *State ex rel. Harrelson v. Williams, Mayor, supra,* the question before the Court was whether Jordon, who had received the nomination of the Democratic party at a primary election was qualified to be elected mayor of Mullins, S. C., on January 14, 1930, the day of the general election. Mr. Jordon did not have a municipal registration certificate, although he was a duly registered elector for the State and county. There were only sixteen persons registered for the general election, and Jordan received all votes cast in the general election.

This Court held that Mr. Jordon could not legally be elected mayor of Mullins, but that the Court had the power to order another election. See quotation from opinion hereinabove.

There appears to be no legal distinction in that case and the one under consideration. Here, a mayor and four aldermen had received the nomination of the Democratic party of the Town of Blacksburg, but there was no general election held because no elector of the town had qualified to vote in the general election. In the *Harrelson case,* while a few electors had qualified to vote and voted for Jordon, he was not eligible to be elected for the reason above stated, and therefore there existed a vacancy in the office of mayor of the Town of Mullins.

Section 7428 of the Code of 1942, provides: "In case a vacancy occurs in the office of mayor or alderman, by death, resignation *or otherwise,* all elections to fill such vacancies shall be held in the same manner and after the same notice as hereinafter provided in Articles 4 and 5, respectively. Should the vacancy occur within sixty days of the regular election it shall be left to the discretion of the council whether or not they shall order an election to fill the vacancy. * * *." (Emphasis added.)

Of course, the mayor and aldermen of the town, constituting the town council, whose terms have expired, continue in office as holdover officers, and as such they have in effect refused after request so to do, to provide for the filling of the vacancies in the office of mayor and aldermen for said town in accordance with their statutory duty. In *State ex rel. Whisonant v. Belue, Mayor, supra,* the Court stated at page 407 of the S. C. Reports, at page 646 of 136 S. E.: "It became the statutory duty of the holdover council, immediately upon the declaration of the annulment of the election, to fill the vacancies as provided for in section 4540, Vol. 3, Code of 1922 [Section 7428, Code 1942], and, if it had been brought to the attention of the Court in a proper proceeding that they refused or neglected to perform this plain ministerial duty, they could have been compelled by mandamus to do so. We find no statutory authority for the issuance of what was practically a writ of mandamus requiring the council to perform a statutory duty before they had refused or neglected to do so."

It is therefore ordered that a writ of mandamus issue from this Court, signed by the Clerk of the Court, directing the holdover town council of Blacksburg, S. C., to provide for the municipal registration of the electors of said town and for the holding of a special election for a mayor and four aldermen of the Town of Blacksburg to fill the existing vacancies, as required by law.

MR. ASSOCIATE JUSTICE STUKES and CIRCUIT JUDGE J. HENRY JOHNSON, ACTING ASSOCIATE JUSTICE, concur.

MR. CHIEF JUSTICE BONHAM did not participate.

CIRCUIT JUDGE J. HENRY JOHNSON, ACTING ASSOCIATE JUSTICE (concurring):

I concur in the opinion of Mr. Justice Baker, but only because of what I consider the binding authority of the *State ex rel. Harrelson v. Williams, Mayor,* 157 S. C., 290, 154 S. E., 164. In that case, in the general election, the nominee of the primary was not qualified to be elected because of his

failure, within the statutory period provided therefor, to secure a municipal registration certificate, and this Court held there was no election, and that a *vacancy* existed in the office of mayor. In the case now before us, the election was ordered, books of registration were opened, as were the polls on election day, but, as no one registered, no one could vote, and, consequently, no one was elected, hence I must conclude that a vacancy exists in the offices of mayor and aldermen of the Town of Blacksburg, and that the writ of mandamus should be issued. If the nominee of the primary had been elected, and his election judicially annulled, there would have been a vacancy. *State ex rel. Whisonant v. Belue,* cited in the leading opinion. In each instance, the vacancy occurred from failure to *elect*; here no one was elected, hence a vacancy must exist.

MR. ASSOCIATE JUSTICE FISHBURNE (dissenting) :

I respectfully dissent from the conclusions reached in the opinion prepared by Mr. Associate Justice Baker in this case. As I view the facts and the law, the petition for a writ of mandamus should be denied.

The facts are fully stated in Justice Baker's opinion. From this statement it appears that the municipal general election for the Town of Blacksburg was duly advertised, the registration books were opened, the managers of such election duly appointed, ballots printed and provided, and on the day appointed for the general election, the polls were opened and kept open and available for the purpose of. voting during the hours provided for by law. No citizen of the town, not even those who had been nominated in the primary for the offices of mayor and aldermen, registered to vote, hence there were no qualified voters, and no one voted.

No fraud, default or neglect of duty is charged against the town council in the functioning of the election machinery. The failure on the part of the citizens to vote resulted solely from their neglect to procure the necessary municipal registration certificate. It is suggested in the petition for the writ

of mandamus that this being the first general election held under a new law which divided the town into wards, the petitioners were ignorant of the legal requirements to vote in the general election, and were under the impression that a voter qualified to vote in the primary election was qualified to vote in the general election.

Under these circumstances, should a writ be issued against the present holdover town council to do that which it is admitted they have already legally done?

It is stated in Justice Baker's opinion that "the effect of the annulment of an election is to declare that a vacancy exists in the office for which the election was attempted to be held, if such annulled election was attempted to be held at the time designated by law." And *State ex rel. Whisonant et al. v. Belue, Mayor,* 138 S. C., 393, 136 S. E., 641, is cited as authority.

In the case of *State ex rel. Whisonant v. Belue,* which involved a contested municipal election in the Town of Blacksburg in the year 1926, the election was judicially annulled upon the ground of fraud. In the current controversy an entirely different situation is presented. Although everything had been done as required by law for the holding of the election, no voter possessed the proper credentials to qualify him to vote. In this state of affairs, the election officials were in no sense responsible.

In my opinion, the facts and issues presented in the case of *State ex rel. Harrelson v. Williams, Mayor,* 157 S. C., 290, 154 S. E., 164, are not analogous to this case. In the *Harrelson case,* the election was duly held, participated in by properly registered voters. Another election was ordered to be held for the sole reason that Mr. Jordon, the nominee for mayor, and who was elected in the general election, was not eligible to hold office, because he did not possess a municipal registration certificate. In view of these circumstances, the Court held that a vacancy existed.

Nor do I think that the ordering of another election is authorized under Section 7428 of the Code, which provides:."In case a vacancy occurs in the office of mayor or alderman, by death, resignation or otherwise, all elections to fill such vacancies shall be held in the same manner and after the same notice as hereinafter provided in articles 4 and 5, respectively. Should the vacancy occur within sixty days of the regular election it shall be left to the discretion of the council whether or not they shall order an election to fill the vacancy. * * * "

It seems to me to be clear that the vacancy referred to in the foregoing section is a vacancy which occurs during the regular tenure of office, and not to a regular, general election at which an entire municipal council is elected.

We may sympathize with the plight of the citizens of Blacksburg who failed to inform themselves of the legal requirements to vote, and who now say that if given another opportunity they will duly exercise the right of suffrage; but I do not believe that the Court under the facts and circumstances here, can afford them any relief.

For the reasons above mentioned, I think the writ of mandamus should be denied.