13494

GARDNER *ET AL. v.* BLACKWELL, SEC. OF STATE *ET AL.*

(166 S. E., 338)

*Messrs. D. W. Robinson, D. W. Robinson, Jr., G. W. Beckett* and *C. B. Ruffin,* for petitioners,

*Messrs. John M. Daniel, Attorney General,* and *Cordie Page, J. Ivey Humphrey, Assistants Attorney General,* for Respondents.

October 25, 1932.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

This is an application in the original jurisdiction of this Court, for both a writ of mandamus and an order of injunction. Some of the provisions of the statutes relating to "The General Election" laws, found in Sections 2298-2309 of Volume 2 of the Code of Laws of 1932, are involved in the cause.

Mr. Justice Stabler, of this Court, to whom the petition was first presented, by his order of October 1, 1932, referred the whole matter to the Supreme Court for hearing, "and for such action by the Court as may be deemed proper by it in the premises." In his order, the petitioners were directed to serve a copy of the order and a copy of their verified petition upon the respondents, but the respondents were not required to make any return to the petition. However, on October 10, 1932, upon the call of the cause in the Court, the Attorney General appeared for the respondents and filed a written return, which the Court, with the consent of the petitioners, directed should be then considered.

The facts necessary for a determination of the legal issues, as they are conceded by the parties in some instances, and not disputed in others, are as follows:

The Republican Party in South Carolina, by some method, but not in a primary election, have nominated for the general election to be held on November 8, 1932, candi-

dates for the offices of United States Senator, Congressmen from the several congressional districts, and eight presidential electors. The petitioner Miss Clara Harrigal is. the nominee for United States Senator; the petitioners D. A. Gardner and C. B. Ruffin are nominees for Representatives in Congress; and the petitioners J. B. Hambright and G. J. Cherry are two of the nominees for presidential electors. The petitioner Gardner is the State chairman of the Republican Party in this State, and the petitioner Miss Elizabeth Hearn is the State secretary of that party. All the petitioners are qualified electors of the State and entitled to vote in the coming general election.

The respondent Hon. W. P. Blackwell is the secretary of State, and, as such official, he is a member of the State board of canvassers. See Sections 2317 and 2318, Vol. 2, Code of 1932. The respondents T. E. Clark and C. H. Hinnant are two of the three duly qualified federal election commissioners for Richland County, and the respondent Killian Harmon is one of such commissioners for Lexington County. These three respondents are made parties to this action, representing themselves and the large number of other federal election commissioners, appointed under the law by the Governor, who are too numerous to be made parties to this proceeding.

The Democratic Party of South Carolina, in primary elections heretofore conducted, have nominated for the coming general election candidates for the offices of United States Senator and Representatives in Congress, and the State committee of that party has nominated the eight candidates of the party for presidential electors.

The petitioners alleged that "it has been the custom and practice at General Elections for tickets containing only the names of the Democratic nominees for office and separate tickets containing only the names of the Republican nominees the election for use of the qualified voters." In this connection, they say that this custom and practice has made it "impossible

for a qualified elector to vote without divulging the names of the candidates for whom he was voting and this practice and this custom has destroyed the secrecy of the ballot guaranteed to each qualified elector and to each candidate by the laws of this State and of the United States." The alleged custom and practice is not altogether admitted by the respondents, who say, however, regarding these allegations, that, if the same are true, nevertheless such custom and practice have not destroyed "the secrecy of the ballot."

The petitioners have requested his Excellency, Hon. I. C. Blackwood, the Governor of the State, the Secretary of State, Mr. Blackwell, and the federal election commissioners, who are made respondents herein, "to prepare or supervise the preparation of a ticket for use by the qualified electors at the General Election containing the names of all candidates for the United States Senate, for United States Congress and for Presidential Electors, including the candidates nominated by the Democratic party and by the Republican party." Along with the request made, the petitioners tendered to his Excellency, the Governor, and the Secretary of State, a list of the candidates nominated by the Republican Party in the State for the named offices, and expressed a willingness to pay one-half of the cost of printing the tickets, or such proportion of such cost, which would be properly chargeable to the candidates for those offices nominated by the Republican Party. The request was refused on the ground that the Governor, the Secretary of State, and the federal election commissioners, and none of them, were authorized or required by law to print, have printed, or supervise the printing of, any tickets for any party; that they had not printed, and would not print, had not supervised, and would not supervise, the printing of, tickets for the Democratic Party, or any other party, because the law does not require them so to do.

The petitioners allege, as matters of law:

(1) That the statutes of this State "provide that there shall be only one ticket or ballot for persons nominated to

the United States Congress. Senate and Presidential Electors, and that under the provisions of these laws the names of all candidates for these positions should be printed on the same ticket in a manner similar to that provided by law for the conduct of primary elections, with proper directions to the qualified elector or voter to scratch the names of candidates for whom he does not desire to vote, and that the vote on a ticket of this kind is the only method by which the absolute secrecy of the ballot can be maintained."

(2) That the request made by them of the Governor, the Secretary of State, and the federal election commissioners was proper and in accordance with the laws of this State and of the United States, and that their request should have been granted.

The petitioners ask of this Court that a writ of mandamus do issue to the Secretary of State, requiring him to print, or supervise the printing of, tickets prepared for use at the coming general election, and that he be expressly required "to print on one ticket the names of all of the candidates for Federal offices," especially including the names of the nominees of the Republican Party in this State for such offices, that the federal election commissioners be required to see "that no ticket other than the ticket containing the names of all of the candidates for the office to be voted for be used at the ballot boxes or counted," and that the Secretary of State be required "to instruct the Commissioners of Election to conduct the same in such manner as will guarantee the secrecy of the ballot."

The petitioners also ask that the respondents be enjoined and restrained "from allowing the use of any ticket or ballot at the General Election other than a ticket or ballot containing the names of all candidates for United States Senate, for United States Congress in the respective Districts and for Presidential Electors," and that the respondents and all the managers of elections be restrained "from conducting the election in such manner as will deprive any elector of the right to maintain the secrecy of his ballot."

The petitioners rightly claim that the offices of United States Senator and Representatives in Congress are federal offices. They contend, too, that presidential electors are federal officers, but we are not prepared to assent to that proposition. Mr. Justice Gray, speaking for the Supreme Court of the United States, in the case of *Fitzgerald v. Green,* 134 U. S., 377, 10 S. Ct., 586, 587, 33 L. Ed., 951, indicated a view different from that of the petitioners, expressed by him in the following language: "The sole function of the presidential electors is to cast, certify, and transmit the vote of the state for president and vice-president of the nation. Although the electors are appointed and act under and pursuant to the constitution of the United States, they are no more officers or agents of the United States than are the members of the state legislatures when acting as electors of federal senators, or the people of the states when acting as electors of representatives in congress."

Regardless of any difference of opinion, however, as to whether any of the offices involved in this proceeding are federal or State, the petitioners very properly admit that "the South Carolina Legislature and the South Carolina Courts have jurisdiction of the matters in issue." See *McPherson v. Blacker,* 146 U. S., 25, 13 S. Ct., 3, 36 L. Ed., 869, and *In re. Yarbrough,* 110 U. S., 651, 4 S. Ct., 152, 28 L. Ed., 274. It follows, therefore, that our examination need only extend to our statutory enactments relating to the general election laws.

We have examined carefully the sections of our ■■ Code of laws to which we have already adverted, and, in addition thereto, Sections 2310 to 2316, Volume 2, of the Code, relating to "The Board of County Canvassers," and Sections 2317 to 2329, *Id.,* under the title of "The Board of State Canvassers." We have not found in any of these statutes any provision whatever authorizing or requiring the Governor of the State, the Secretary of State, the State Board of Canvassers, the County Board of

Canvassers, the election commissioners, either federal or State, or managers of elections, to print, provide, or furnish ballots for any general election. On the contrary, it appears to us that the duty of printing or providing ballots for the general elections has not been imposed by any statute upon any officer, State or county. The Constitution of the State is likewise absolutely silent in this regard.

There seems to be a suggestion on the part of the petitioners that, since the Secretary of State, as a member of the State Board of Canvassers, has been in the habit of sending to election commissioners instructions as to the manner in which general elections are to be conducted, and certain blanks for making reports and returns of the elections, that official has assumed somewhat the duty of providing ballots for the election. We cannot think there is any merit in the suggestion. The purpose of the Secretary of State evidently has been to inform election officials of the statutory provisions as to the manner in which general elections are to be conducted and the returns thereof certified to the proper officers. The Secretary of State, according to the record before us, has at no time furnished ballots or directed the commissioners or managers of election to furnish them.

Certainly, there has not been pointed out to the Court by the petitioners any legislative enactment which makes it the duty of any person, who is a party to this proceeding, or the duty of any other person for that matter, under our statutes, to provide ballots for a general election.

In these circumstances, it is entirely clear that the petitioners are not entitled to the writ of mandamus they seek. Before a writ of mandamus should be directed by the Court to any public officer, requiring such officer to perform some act, the applicant for the writ should show certain necessary things: First, a duty imposed upon the officer to perform the act; second, that the duty is one ministerial in its character; third, that the applicant has "a legal right, for the enjoyment, protection or redress of which the discharge of

such duty is necessary"; and, fourth, that the applicant has no other and sufficient remedy. 18 R. C. L., 114, Par. 26.

It is not necessary to enter upon a discussion of whether or not the petitioners here have shown the third and fourth essential matters, for, as already indicated, it is absolutely certain they have not shown the very first thing necessary to be established, namely, the duty on the part of any officer made a party to this proceeding to provide, print, or to supervise the providing or printing of ballots for the general election.

Our conclusion is supported not only by the principles announced in Ruling Case Law, to which we have referred, but by many other authorities. We quote from a few of these.

"The duties which will be enforced by mandamus must be such as are clearly and peremptorily enjoined by law. Where for any reasons the duty to perform the act is doubtful, the obligation is not regarded as imperative, and the applicant will be left to his other remedies. So when the statute prescribing the duty does not clearly and directly create it, the writ will not lie." 26 Cyc., 162.

"The use of the writ of mandamus is limited to the enforcement of a merely ministerial duty, and to the protection of a plain, admitted, and unquestioned legal right that has been arbitrarily or without due warrant of law denied. *United States ex rel. Riverside Oil Co. v. Hitchcock,* 21 App. D. C., 252, judgment affirmed 190 U. S., 316, 23 S. Ct., 698, 47 L. Ed., 1074."

"Mandamus will not issue to enforce doubtful rights." *Lewis v. Board of Com'rs of Wake County,* 192 N. C., 456, 135 S. E., 347.

"Mandamus will only go to protect a clear legal right, and will never lie to compel the performance of an act prohibited by law." *State v. State Road Commission,* 102 W. Va., 88, 134 S. E., 465.

"Mandamus will not lie to compel a public officer to perform an act which the law has not empowered, directed, or

authorized him to do." *Powell v. Bainbridge State Bank,* 161 Ga., 855, 132 S. E., 60.

Our own cases are in full accord with the general principles announced above. See *National Loan & Exchange Bank v. Jones,* 103 S. C., 80, 87 S. E., 482; *Rouse v. Benton,* 100 S. C., 150, 84 S. E., 533; *Banks v. Edgefield County Commissioners,* 92 S. C., 436, 75 S. E., 791; *Fooshe v. McDonald,* 82 S. C., 22, 63 S. E., 3; *Richland Drug Company v. Moorman,* 71 S. C., 236, 50 S. E., 792; *State ex rel. Williams v. Hiers,* 51 S. C., 388, 29 S. E., 89; *State ex rel. Snelling v. Turner,* 32 S. C., 348, 11 S. E., 99.

We inquire next into the right of the petitioners to the injunction they ask. Briefly, their claim, as stated in the language of the printed argument of their counsel, is this: "The laws of South Carolina provide for the names of all candidates for United States Senate, for Congress and for Presidential Elector to be placed upon one ticket as the only sure method of insuring the secrecy of the ballot."

We are in full accord with the assertion of the petitioners that a voter is entitled, under the provisions of our Constitution, the statutes of the State, and the decisions of this Court, to "the right of secrecy in casting his ballot" in the general election. See Sections 1 and 15 of Article 2 of the Constitution; Section 2304, Volume 2, Code of 1932; *State ex rel. Birchmore v. State Board of Canvassers,* 78 S. C., 461, 59 S. E., 145, 14 L. R. A. (N. S.), 850, 13 Ann. Cas., 1133; and *State v. Shaw,* 9 S. C., 94. A provision of the statute (Section 2304 of the Code), among other things, in the effort to secure secrecy of the ballot, provides that "such ballot [cast in the general election] shall be so folded as to conceal the name or names, question or questions thereon, and so folded shall be deposited in" the proper election box.

By no possible reasonable construction of the statutes under consideration, however, are we able to agree with the position of the petitioners that a ballot or ticket voted in the

general election shall contain the names of all the candidates for United States Senator, for Representatives in Congress, and for presidential electors. On the contrary, we are firmly of the opinion that there can be no doubt that the construction the petitioners ask us to place on those statutes is absolutely erroneous. The section of the Code (2304 of Vol. 2), the only one we think necessary to be considered in determining the particular question before us, is, quoted in full, as follows: "There shall be three separate and distinct ballots, as follows: One ballot for United States Senator, Representatives in Congress and Presidential Electors; and one ballot for Governor, Lieutenant Governor, State officers, Circuit Solicitors, members of the House of Representatives, State Senator, county officers and one ballot for all Constitutional amendments and special questions, each of three said boxes to be appropriately labeled; which ballots shall be of plain, white paper and of such width and length as to contain the names of the officer or officers and question or questions to be voted for or upon, clear and even cut, without ornament, designation, mutilation, symbol or mark of any kind whatsoever, except the name or names of the person or persons voted for and the office to which such person or persons are intended to be chosen, and all special questions, which name or names, officer or officers, question or questions shall be written or printed or partly written or partly printed thereon in black ink; and such ballot shall be so folded as to conceal the name or names, question or questions thereon, and so folded shall be deposited in a box to be constructed, kept and disposed of as herein provided by law, and no ballot of any other description found in either of said boxes shall be counted."

The original Act, from which the quoted section comes, known as the "McCrady Election Law." was enacted on February 9, 1882 (17 Stats., 1110). In many respects, the present statute, 2304 of the Code, is similar to the first law. The important changes made in the original law were those

effected in the Act of the special session of the General Assembly of 1914 (29 Stats., 10), when the ballots and boxes to be used were reduced from eight to three, and the requirement that each ballot should be of a certain size, namely, "two and a half inches wide by five inches long," was stricken out.

It appears from the record here, and from the history of the conduct of general elections in this State, of which this Court may take judicial notice, a fact which the petitioners do not attempt to controvert, that continuously since 1882, in the general elections of this State, the ballots voted have been such as were furnished by the respective political parties participating in such election, and that on such ballots there have appeared only the names of the candidates for the respective offices put in nomination by such political parties, and the offices voted for. At no time throughout all these years has any ballot been used in any general election which contained the names of all the candidates for any office, State or federal, in such election.

The "custom and practice," admitted by the petitioners, has been for any political party desiring to take part in a general election to have printed and provided for use of the voters such ballots as they desired, on which appeared only the names of the candidates of that party, and the respective officers for which such candidates were voted. That "custom and practice," in our opinion, has conformed with the statutory provisions; certainly they have not been in conflict therewith.

The statute, relating to the subject, provides that the ballots voted shall be: "of such width and length as to contain the names of the officer or officers * * * to be voted for. * * *" After prescribing that the ballot shall be "without ornament, designation, mutilation, symbol or mark of any kind whatsoever," there follows the clear exception that the only thing appearing on the ballot is to be "the name or names of the person or persons voted for

and the office to which such person or persons are intended to be chosen."

The particular question is not now before us, but, on account of the exception before quoted, there may be some merit in the suggestion advanced by counsel for the respondents that it is improper for the ballot to have on it the name or names of candidates or persons who are not intended to be voted for.

There is no provision in our Constitution or statutes, as there appears to be in the statutes of some other States, regarding the certifying of candidates to any board or officer for the general election. It is not necessary in South Carolina for a person, who is qualified, to become a candidate for any office in the general election, to have the indorsement, nomination, or certification of any political party or group of citizens or voters before he may become a candidate and be voted for in the general election. Any citizen qualified to hold the office to which he aspires may, on his own initiative, become a candidate for such office in the general election. More than that, any voter has the legal right in a general election to cast his ballot for any person for any particular office, even if the person desired to be voted for is not a candidate of any political party, or has not even announced on his own individual responsibility his candidacy for the office.

With the right of any political party to present candidates for office, and with the right of any citizen to become a candidate for office, for which he is qualified, in the general election, and with the right of the voter to vote for whom he pleases, all being so clearly apparent, it is inconceivable that this Court should enjoin any party to this proceeding or the managers of election from allowing a qualified voter to vote in the election a ballot other than the particular kind of ballot asked to be used by the petitioners. To do so would not only be violative of the statute law, but would deny citizens, who are not members of the Democratic or Re-

publican parties, such as Socialists, Prohibitionists, Farm Laborites, and independent voters, "the free exercise of the right of suffrage in this State," guaranteed to them by Section 15 of Article 2 of our Constitution, to which provision the petitioners themselves have appealed.

The final general request of the petitioners, if they fail in their other requests, to which we have referred, is that this Court by its writ have the commissioners of election instructed to conduct the election "in such manner as will guarantee the secrecy of the ballot." The specific request, referred to in the printed argument of the petitioners, to which this general request relates, is that the managers of election be required "to place any tickets for candidates, left at the polls, in booths or on tables at some distance from the boxes and free from the scrutiny of onlookers and Managers, where the qualified elector may select the ticket which he desires to vote free from interference or scrutiny, fold it and bring it back to the box for the purpose of voting."

As we have already indicated, there is no provision in our laws requiring any official, the Secretary of State or other official, to give instructions to the commissioners of election or the managers as to the manner of conducting elections. The Secretary of State not improperly, but to our mind very properly, for the purpose of informing election officials, has been in the habit of sending to the commissioners of elections, for the use of themselves and managers of election, copies of the election laws. Those laws, from time to time, in some respects, have been construed by the Courts, and all the people, including election officials, are presumed to have knowledge of the laws and the Court's construction of their language. It is assumed that all the election officials will discharge their respective duties as required by law. There is nothing before this Court to show that any election official has threatened to violate the laws or the oaths of office which they have taken, or may hereafter take. Presuming as we should that the com-

ing general election will be conducted in the manner required by the Constitution of this State and the statutory enactments relating to such election, the Court in this proceeding could not properly attempt at this time to interfere therewith, or give instructions or suggestions thereabout. It is not the province of the Court to deal with theoretical matters. It is our duty to pass upon proper legal questions presented to us in the proper manner.

From what we have said, it follows that the petition of the petitioners must be dismissed; and it is so ordered.

MESSRS. JUSTICES STABLER, CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.