519 S.E.2d 567

**CHARLESTON COUNTY SCHOOL DISTRICT, Respondent,**

**v.**

**CHARLESTON COUNTY ELECTION COMMISSION and State of South Carolina Election Commission, of whom State of South Carolina Election Commission is Appellant.**

**No. 24980.**

Supreme Court of South Carolina.

Heard June 23, 1999.

Decided Aug. 2, 1999.

Attorney General Charles M. Condon, Deputy Attorney General Treva G. Ashworth, Assistant and Deputy Attorney General J. Emory Smith, Jr., all of Columbia, for appellant.

Robert N. Rosen, Donald B. Clark, and Daniel F. Blanchard, all of Rosen, Goodstein, and Hagood, of Charleston, for respondent.

WALLER, Justice:

The circuit court, at the request of the Charleston County School District (District), issued a writ of mandamus directing the Charleston County Election Commission (County Commission) to post and distribute a supplemental ballot handout to voters at each precinct during a $350 million school bond

referendum. The South Carolina State Election Commission (State Commission) appeals. We reverse.

## FACTS

District's Board of Trustees adopted a resolution in January 1998 calling for a $350 million bond referendum to build or renovate 76 schools. District directed County Commission to conduct an election March 28, 1998.

The ballot form prepared by District for placement on electronic voting machines consisted of text the length of twelve typewritten pages. The ballot form stated the question,[1] then briefly listed specific renovations and additions that would occur at each school. County Commission, after consulting with State Commission, informed District the ballot form as proposed was too long to fit on the machines. Neither District nor County Commission wanted to use paper ballots.

After further discussion, County Commission agreed to place a summarized version of the question on the machines containing only the question and a list of affected schools. County Commission also agreed to post and distribute to voters at each precinct a twelve-page supplemental ballot handout (titled "Official Ballot Handout") containing the complete list of specific renovations and additions, along with the total estimated amount to be spent at each school. The Charleston County seal was placed at the top of the first page of the handout, a change that was informally approved only by County Commission's chairman. District printed 190,000 copies of the handout at a cost of $12,000. District also sought and obtained election pre-clearance from the United States Department of Justice in accordance with the Voting Rights Act of 1965.

---

1. The question stated:

 Shall the Board of Trustees of Charleston County School District, South Carolina, be empowered to issue general obligation bonds of the School District in the aggregate principal amount not to exceed $350,000,000, the proceeds of which shall be used for the purpose of repairing, renovating and adding school facilities and classrooms, including specifically the projects listed below, and the implementation of the Community Review Panel as approved by the Board of Trustees on January 20, 1998?

County Commission reversed its position at a meeting March 10, 1998. County commissioners stated in affidavits that State Election Commission Chairman Sam Howell's statements against distributing the handout, letters and comments from state legislators opposing the handout, and changes made by District in the handout, including the addition of the county seal, prompted them to refuse to distribute it. Commissioners believed the handout violated S.C.Code Ann. § 7–25–180 (Supp.1998), which prohibits the distribution of "campaign literature" within 200 feet of any polling place.

District filed a complaint and a motion seeking a writ of mandamus and mandatory injunction under Rule 65(f), SCRCP. District's complaint included a declaratory judgment action pursuant to S.C.Code Ann. § 15–53–30 (1976). County Commission and State Commission opposed District's request. The circuit court granted the motion for a writ of mandamus and ordered County Commission to post and distribute the handout. The order did not address the declaratory judgment action. County Commission complied with the order. A majority of voters rejected the bond referendum.

## STANDARD OF REVIEW

"Mandamus is somewhat of a hybrid proceeding. It is not a suit in tort, nor is it a suit in contract; it is not strictly a law case, nor is it one in equity. It is based on the theory that an officer charged with a purely ministerial duty can be compelled to perform that duty in case of refusal." *Lombard Iron Works & Supply Co. v. Town of Allendale,* 187 S.C. 89, 95–96, 196 S.E. 513, 516 (1938). Whether to issue a writ of mandamus lies within the sound discretion of the trial court, and an appellate court will not overturn that decision unless the trial court abuses its discretion. *Jolly v. Marion Nat'l Bank,* 267 S.C. 681, 685–86, 231 S.E.2d 206, 208 (1976); *Linton v. Gaillard,* 203 S.C. 19, 23, 25 S.E.2d 896, 898 (1943). An abuse of discretion arises where the trial court was controlled by an error of law or where its order is based on factual conclusions that are without evidentiary support. *Tri-County Ice and Fuel Co. v. Palmetto Ice Co.,* 303 S.C. 237, 242, 399 S.E.2d 779, 782 (1990). In reviewing a decision on a mandamus petition, an appellate court will not disturb the factual findings of the trial court when those findings are

supported by any reasonable evidence. *De Pass v. Broad River Power Co.,* 173 S.C. 387, 395, 176 S.E. 325, 328 (1934).

## ISSUES

1. Is this appeal moot?
2. Does State Commission have standing to appeal this case?
3. Did the circuit court err in issuing a writ of mandamus directing County Commission to post and distribute a supplemental ballot handout?

## DISCUSSION

### 1. MOOTNESS

■ District contends the Court should not hear this appeal because the case is moot. The handout was posted and distributed, the referendum failed, and no one appealed the outcome of the election. We disagree.

■ "This Court will not pass on moot and academic questions or make an adjudication where there remains no actual controversy. Mootness has been defined as follows: 'A case becomes moot when judgment, if rendered, will have no practical legal effect upon existing controversy. This is true when some event occurs making it impossible for [the] reviewing Court to grant effectual relief.'" *Byrd v. Irmo High School,* 321 S.C. 426, 431, 468 S.E.2d 861, 864 (1996) (citations omitted). A court may take jurisdiction, despite mootness, if "the issue raised is 'capable of repetition but evading review.'" *Id.* (citing *In Interest of Darlene C.,* 278 S.C. 664, 665, 301 S.E.2d 136, 137 (1983)).

We choose to decide this appeal even though this particular case is moot. The same situation could arise again and it is unlikely an appellate court would resolve such a case before an election was held.

### 2. STANDING

■ District asserts State Commission lacks standing to adjudicate the rights of County Commission, which is not a party to this appeal, before this Court. State Commission is

not responsible for conducting local elections, but merely provides advice and technical assistance, District contends. We disagree.

To have standing, one must have a personal stake in the subject matter of the lawsuit, i.e., one must be a real party in interest. *Glaze v. Grooms*, 324 S.C. 249, 255, 478 S.E.2d 841, 845 (1996); *Townsend v. Townsend*, 323 S.C. 309, 474 S.E.2d 424 (1996). "A real party in interest is one who has a real, material, or substantial interest in the subject matter of the action, as opposed to one who has only a nominal or technical interest in the action." *Anchor Point Inc. v. Shoals Sewer Co.*, 308 S.C. 422, 428, 418 S.E.2d 546, 549 (1992).

State Commission has standing to pursue this appeal because it has significant duties regarding ballot forms which give it a real and substantial interest in this case. *E.g.*, S.C.Code Ann. § 7–13–320 (1976 & Supp.1998) (ballot standards and specifications); S.C.Code Ann. § 7–13–325 (Supp. 1998) (develop regulations and forms on candidate's name as it appears on ballot); S.C.Code Ann. §§ 7–13–330 and –335 (1976 & Supp.1998) (arrangement of names and offices on ballot); S.C.Code Ann. § 7–13–340 (1976) (prepare and distribute all state and national ballots); S.C.Code Ann. § 7–13–400 (1976) (form of ballot for bond referendum or other question); S.C.Code Ann. § 7–13–610 (Supp.1998) (preparation of certain primary ballots); S.C.Code Ann. § 7–13–611 (Supp.1998) (establishing sample "official ballot" and giving State Commission power to promulgate regulations on county and state ballots); S.C.Code Ann. § 7–13–1360(c) and –1370 (1976) (prescribe form and arrangement of ballot labels and ballot cards used in vote recorders); S.C.Code Ann. § 7–13–1490 (1976) (promulgate regulations on use of vote recorders).

Furthermore, State Commission may appeal because District named it as a party in its complaint and motion, and the circuit court named it as a party in its order. *See* Rule 201(b), SCACR ("[o]nly a party aggrieved by an order, judgment, or sentence may appeal").

### 3. *WRIT OF MANDAMUS*

State Commission asserts the circuit court erred in issuing a writ of mandamus because (1) no established right

exists to the use of a handout in a bond referendum; (2) any decision on the use of a handout was for County Commission to make, not District; (3) District had an adequate remedy at law because it could have delayed the election to resolve the handout issue; and (4) a supplemental ballot handout on a bond referendum is not authorized by statute or case law.

District contends mandamus was proper because (1) District has the authority to write the question to be placed on the ballot form, and County Commission must merely carry out its ministerial duty by conducting the election as ordered; (2) District did not have time before the election to engage in protracted litigation to enforce its rights; (3) no statute prohibits supplemental ballot handouts; and (4) the handout was not forbidden "campaign literature," but was merely the full, unbiased text of the public measure at issue and was permissible under the statutes and this Court's precedent.

 "The writ of mandamus is the highest judicial writ known to the law.... The primary purpose or function of a writ of mandamus is to enforce an established right, and to enforce a corresponding imperative duty created or imposed by law. It is designed to promote justice, subject to certain well-defined qualifications. Its principal function is to command and execute, and not to inquire and adjudicate." *Willimon v. City of Greenville*, 243 S.C. 82, 86–87, 132 S.E.2d 169, 170–71 (1963).

 Accordingly, to obtain a writ of mandamus requiring the performance of an act, the applicant must show (1) a duty of the opposing party to perform the act, (2) the ministerial nature of the act, (3) the applicant's specific legal right for which discharge of the duty is necessary, and (4) a lack of any other legal remedy. *Redmond v. Lexington County School Dist. No. Four*, 314 S.C. 431, 437, 445 S.E.2d 441, 445, (1994) (citing *Willimon v. City of Greenville, supra*). In analyzing these factors, it must be emphasized that "[w]here for any reasons the duty to perform the act is doubtful, the obligation is not regarded as imperative, and the applicant will be left to his other remedies. So when the statute prescribing the duty does not clearly and directly create it, the writ will not lie.... Mandamus will not issue to enforce doubtful rights." *Gardner v. Blackwell*, 167 S.C. 313, 321, 166 S.E. 338, 341 (1932). The

duty to perform an act must be indisputable and plainly defined. *Central South Carolina Chapter, Society of Professional Journalists v. United States District Court,* 551 F.2d 559, 562 (4th Cir.1977).

We hold that the circuit court abused its discretion in issuing a writ of mandamus because none of the four factors is met in this case. The circuit court's decision was controlled by an error of law.

First, District has not shown that County Commission or State Commission has a plainly defined duty to post and distribute a supplemental ballot handout on a bond referendum. District has cited no statute or case, and we have found none, requiring County Commission to distribute the handout. *See Gardner v. Blackwell, supra* (this Court refused to issue writ of mandamus in its original jurisdiction to force election officials to prepare a single ballot listing national candidates because no statute required it).

Second, we agree with District that the general duty of organizing and conducting the election is a ministerial act. It would have been proper for the circuit court to issue a writ of mandamus directing County Commission to organize and conduct a bond referendum ordered by District if County Commission had refused to do so. *See* S.C.Code Ann. § 59–71–40 (1990) (after District orders the bond referendum and notifies County Commission, "[i]t shall thereupon become the duty of the commissioners of election to conduct the election so ordered"); *Killian v. Wilkins,* 203 S.C. 74, 26 S.E.2d 246 (1943) (after vacancy was created when no candidates were elected because citizens failed to properly register to vote in duly called election, Court issued writ of mandamus directing holdover town officials to organize a special election as required by statute); *Easler v. Maybank,* 191 S.C. 511, 5 S.E.2d 288 (1939) (after Court declared void an election of school trustees, Court had power to compel election by issuing writ of mandamus to governor under statute authorizing the election).

In this case, however, County Commission met promptly to begin organizing the election after District approved the resolution calling for the bond referendum. The ministerial act at issue is not the general duty of organizing and conducting the election; the ministerial act at issue is whether County Com-

mission has a specific duty to distribute a supplemental ballot handout upon District's order.

It also would have been proper for the circuit court to issue a writ of mandamus directing County Commission to place the question approved by District on the ballot if County Commission had refused to do so. District has the ultimate authority to determine the form of the ballot as it pertains to the substantive content of the question placed on the ballot. Neither State Commission nor County Commission has any unilateral authority to shorten or change the wording of a question to fit a particular ballot form. State Commission and County Commission, subject to statutory guidance, control the form of the ballot only as it pertains to physical characteristics of the ballot such as space limitations and the arrangement of names and issues. *See* 29 C.J.S. *Elections* §§ 155–56 (1965) (act of having ballots printed is ministerial, and officials must follow statutes regarding form and content of ballots).

If District had insisted on keeping the question it originally proposed, then County Commission would have been required to conduct an election with paper ballots because the question was too lengthy to place on the voting machine ballot. That proved unnecessary in this instance because District and County Commission worked together to prepare a shorter question that would fit on the voting machine ballot.

Third, District has not cited any statute or case, and we have found none, demonstrating it has a clearly established right to force County Commission to distribute the supplemental ballot handout.

Fourth, District had another legal remedy. This case could have been resolved under the Uniform Declaratory Judgments Act. S.C.Code Ann. §§ 15–53–10 to –140 (1976 & Supp.1998); Rule 57, SCRCP. "Any person ... whose rights, status or other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status or other legal relations thereunder." S.C.Code Ann. § 15–53–30 (1976). This case presented a justiciable controversy. *See Graham v. State Farm Mut. Auto. Ins. Co.*, 319 S.C. 69, 459 S.E.2d 844 (1995) (justiciable controversy exists when a concrete issue is present, there is a definite assertion

of legal rights and a positive legal duty which is denied by the adverse party).

The only supplemental ballot handout local election officials are explicitly authorized by statute to distribute is an explanation of a proposed constitutional amendment. *See* S.C.Code Ann. § 7–13–2110 and –2120 (1976). The record reveals that similar handouts, proper or not, have been used in other elections.[2]

The Court has held that the question which appears on a voting machine ballot is not required to contain the entire text of a proposed measure. The summarized question must explain the measure "plainly, fairly, and in such words that the average voter may understand its character and purpose." *Stackhouse v. Floyd*, 248 S.C. 183, 193, 149 S.E.2d 437, 443 (1966); *accord Fleming v. Royall*, 145 S.C. 438, 143 S.E. 162, 166 (1928) ("[i]t is not necessary to set forth at length in the ballot the full terms of the [constitutional] amendment, if the notice gives sufficient information to the electors"); 29 C.J.S. *Elections* § 170 (question on ballot is sufficient if it identifies the matter and shows its character and purpose without misleading or deceiving voters); 26 Am.Jur.2d *Elections* § 313 (1996) (same). The Court, however, has not decided whether a governing body may force local election officials to distribute a supplemental ballot handout containing the full text of a proposed measure when a summary of the measure is placed on a voting machine ballot.

In light of our decision that the circuit court erred in issuing the writ of mandamus, we decline to address the propriety of this supplemental ballot handout. This case presents a practical problem—complex or lengthy measures that will not fit on ballot forms used in modern voting machines. We suggest

2. A letter written by State Commission Executive Director James F. Hendrix to District's counsel explains that the handout proposed by District "is similar to what we have done in general elections when there are large numbers of amendments on the ballot and what has been done in other referenda when the question exceeds the capacity of the voting system being used." At the circuit court hearing on the mandamus motion, State Commission's counsel conceded supplemental ballot handouts have "been used in the past and not just [with] constitutional amendments, [b]ut that doesn't mean they were in compliance with the law."

the Legislature may wish to address the matter of supplemental ballot handouts such as the one at issue in this case.

## CONCLUSION

We decide this appeal, even though this particular case is moot, because the issue is capable of repetition yet evading review. State Commission has standing to pursue the appeal because it has significant duties regarding ballot forms. We reverse the circuit court because it abused its discretion in issuing a writ of mandamus when there was no plainly defined duty or clearly established right to post and distribute a supplemental ballot handout.

REVERSED.

FINNEY, C.J., TOAL, MOORE, and BURNETT, JJ., concur.