542 S.E.2d 366

**Jerry A. PRESSLEY, Appellant,**

v.

**LANCASTER COUNTY, a political subdivision of the State of South Carolina, Respondent.**

No. 3274.

Court of Appeals of South Carolina.

Heard Nov. 8, 2000.

Decided Jan. 2, 2001.

Rehearing Denied March 12, 2001.

---

J. Edward Bradley and S. Jahue Moore, both of Wilson, Moore, Taylor & O'Day, of West Columbia; and Don S. Rushing, of Rushing & Griffith, of Lancaster, for appellant.

Melvin B. McKeown, Jr., of McKeown Law Firm, of York, for respondent.

PER CURIAM:

Jerry A. Pressley filed a petition for judicial review of the Lancaster County Council's refusal to issue a Letter of Consistency (LOC). He also filed a petition for a writ of mandamus compelling Lancaster County, through its administrator, to issue the LOC. The trial court affirmed the County Council (Council) and denied Pressley's petition for a writ of mandamus. Pressley appeals. We affirm as modified.

### FACTS

Pressley owns and operates an open pit gravel mine in Lancaster County, near the North Carolina–South Carolina border. Pressley applied for a permit to operate a construction and demolition (C & D) landfill on the property. On July 15, 1996, the Lancaster County Zoning Board of Appeals granted Pressley a special exception allowing him to establish the landfill. Pressley purchased additional land as a buffer zone, installed monitoring wells, and purchased landfill equipment.

The Department of Health and Environmental Control (DHEC) requires an applicant for a C & D landfill permit to obtain a LOC from the county prior to reviewing the applicant's request for approval. As a last step in fulfilling DHEC's requirements, Pressley attempted to obtain the LOC from the Lancaster County administrator. The administrator notified Pressley the LOC required Council's approval.

Council does not have a written policy, ordinance, or other resolution governing the issuance of LOCs. The Lancaster County Solid Waste Plan does not require the County to provide a separate C & D landfill. The Catawba Regional Plan on Solid Waste Management, which Lancaster County joined in February, 1996, recommends the use of a separate C & D landfill but does not require it.

Pressley presented his request at the May 5, 1997 Council meeting. Council recognized it would have to reconsider a moratorium it previously placed on the issuance of LOCs. The issues of the reconsideration of the moratorium and consideration of Pressley's request were placed on the agenda of the next meeting.

At the May 27, 1997 meeting, Council repealed the moratorium. Council then considered Pressley's request. Pressley stated the landfill would handle approximately 300,000 tons of C & D waste per year. According to the minutes of the May 27 meeting, several members commented that Council's decision should be based upon the need in Lancaster County and the best interests of Lancaster County citizens. Council denied Pressley's request.

Pressley requested a reconsideration, J. Chappel Hurst, Jr., the Lancaster County Administrator, informed Pressley that his request could only be honored if a Council member who voted against the LOC moved to reconsider the issue. Although a member asked that reconsideration of the denial of Pressley's request for a LOC be placed on the agenda of the next meeting, the record on appeal does not indicate the matter was ever reconsidered.[1] At the time of Pressley's request, seven sites were seeking LOCs for C & D landfills.

---

1. At the June 16, 1997 meeting Council voted to amend the County's Solid Waste Plan to include a statement of the County's need for 40,000

On June 26, 1998, Pressley filed a complaint seeking judicial review of Council's decision. Pressley also sought a declaratory judgment of the constitutionality of the moratorium and of Council's decision. He subsequently filed a petition for a writ of mandamus compelling Lancaster County to issue the LOC.

The trial court found Pressley's constitutional argument, that Council's action violated the Commerce Clause of the United States Constitution, was without merit. It also noted Pressley neither alleged nor proved that The South Carolina Solid Waste Policy and Management Act[2] was unconstitutional. It held Pressley was not entitled to a writ of mandamus because Pressley failed to prove the ministerial nature of the act of issuing a LOC and the unavailability of any other remedy. The trial court found Pressley had not exhausted his administrative remedies because he had not pursued a final ruling from DHEC. The court dismissed the petition for judicial review and denied the petition for a declaratory judgment, an injunction, and a writ of mandamus.

## LAW/ANALYSIS

### 1. The LOC

Pressley argues Council's denial of his request for the LOC was arbitrary and capricious because Council did not follow its previous unwritten practice or any written criteria. We disagree.

The South Carolina Solid Waste Policy and Management Act requires planning for solid waste disposal at the state and local or regional level. S.C.Code Ann. § 44–96–80(A)(Supp.1999). Lancaster County participated with Chester, Union, and York Counties to develop the Catawba Regional Plan, which DHEC approved. The Act requires a person to obtain a permit from DHEC before operating a solid waste management facility. S.C.Code Ann. § 44–96–290(A) (Supp. 1999).

---

tons per year of C & D waste. It also voted to amend the plan to include a statement of the need for two C & D landfills, one each in the southern and northern ends of the County.

**2.** S.C.Code Ann. § 44–96–10 *et seq.* (Supp.1999).

Permits are issued based on the local need for the requested facility and the consistency of the proposed facility with local zoning and other ordinances. Accordingly, the Act provides:

No permit to construct a new solid waste management facility or to expand an existing solid waste management facility may be issued until a demonstration of need is approved by the department.... In determining if there is a need for new or expanded solid waste disposal sites, the department shall not consider solid waste generated in jurisdictions not subject to the provisions of a county or regional solid waste management plan pursuant to this chapter.

S.C.Code Ann. § 44–96–290(E) (Supp.1999).

The Act further mandates that DHEC cannot issue a permit unless the proposed facility "is consistent with local zoning, land use, and other applicable local ordinances, if any; that, eighteen months after the date of enactment of this chapter, the proposed facility or expansion is consistent with the local or regional solid waste management plan and the state solid waste management plan." S.C.Code Ann. § 44–96–290(G)(Supp.1999).

The Act does not specify how such determinations of need and consistency are to be made. DHEC's practice has been to delegate to the counties the authority to determine consistency through their issuance of the LOCs.[3] According to the regulation, DHEC determines the allowable rate of disposal based on the Region/County Solid Waste Management Plans, the LOCs, the facility's design capacity, the expected operational life, and the area to be served by the facility as outlined in the permit application. S.C. Reg. 61–107.11(IV)(A)(5) (Supp.1999). Art Braswell, of DHEC, stated DHEC essentially delegated the authority to the local governments to determine whether the proposed landfills are consistent with the local plans.

Braswell also asserted DHEC believed a county's need for a new C & D landfill should be determined by the county. He explained, "As far as whether the need [exists], you're looking

---

3. In its order, the trial court commented: "This delegation of approval ... may be impermissible. However, this Court offers no opinion on this issue."

at transportation cost, amounts of waste generated in the county, whether it's a regional facility, things like that."

In requiring an applicant to procure a LOC from the host county, DHEC intends for the local government to evaluate the same factors which the Act requires DHEC to consider. Although Lancaster County has not passed an ordinance outlining criteria for the issuance of a LOC, the criteria may be found in state statutes and regulations and in the Catawba Regional Plan. As Hurst explained, the county did not adopt a written policy regarding the County's determination of need because the requirement for need is already set forth in state law and is implicitly part of the local plan.

At the time of Pressley's request for a facility with a 300,000 ton capacity, the Mining Road Landfill in Lancaster County, an industrial waste landfill in Lancaster County permitted to receive C & D waste, had a capacity of 100,000 tons per year of C & D waste and of another 100,000 tons of industrial waste. Lancaster County produced only 3,998.70 tons of C & D waste in 1996. According to Hurst, Lancaster County's plan at the time of Pressley's request called for only one facility.

A governmental body's decision "is arbitrary if it is without a rational basis, is based alone on one's will and not upon any course of reasoning and exercise of judgment, is made at pleasure, without adequate determining principles, or is governed by no fixed rules or standards." *Deese v. South Carolina State Bd. of Dentistry,* 286 S.C. 182, 184–5, 332 S.E.2d 539, 541 (Ct.App.1985). The party challenging a governmental body's decision bears the burden of proving the decision is arbitrary. *See Restaurant Row Assocs. v. Horry County,* 335·S.C. 209, 516 S.E.2d 442 (1999)(stating an applicant seeking a variance from a zoning board bears the burden of proof). In light of the Act, DHEC's regulations, and the excess capacity existing in Lancaster County, we find Council did not act arbitrarily and capriciously in denying Pressley's request for a LOC.

Pressley also argues Council did not follow its prior procedure because Council rather than the county administrator considered his request for the LOC. "The governing body

of a county has the responsibility and authority to provide for the operation of solid waste management facilities to meet the needs of all incorporated or unincorporated areas of the county." S.C.Code Ann. § 44–96–80(J) (Supp.1999). As the governing body of the county, Council certainly had the authority to consider Pressley's request.

In addition, Pressley asserts Council erred in not following the decision of the Zoning Board. He contends the Zoning Board is the only body with authority to approve a landfill. The County's Zoning Board has authority to determine land use issues and grant special exceptions. The Zoning Board was acting within this authority when it found that Pressley's prospective landfill complied "with all development standards of the Lancaster County Land Use Ordinance subject to a C & D landfill." However, compliance with the land use ordinance is not equivalent to compliance with the Catawba Regional Solid Waste Management Plan or state statutes. As stated above, Council has the responsibility and authority to provide for the operation of solid waste management facilities. S.C.Code Ann. § 44–96–80 (Supp.1999). Therefore, Council was not bound by the Zoning Board's decision.

2.  *The Petition for a Writ of Mandamus*

Pressley argues the trial court erred in denying his petition for a writ of mandamus. We disagree.

In order to obtain a writ of mandamus requiring the performance of an act, the applicant must show (1) a duty of the opposing party to perform the act, (2) the ministerial nature of the act, (3) the applicant's specific legal right for which discharge of the duty is necessary, and (4) a lack of any other legal remedy. *Charleston County Sch. Dist. v. Charleston County Election Comm'n*, 336 S.C. 174, 519 S.E.2d 567 (1999). If the duty to perform the act is doubtful, the responsibility is not imperative and the applicant will be left to other remedies. Where the duty is not clearly and directly prescribed, the writ will not lie. *Id.*

Pressley asserts the only discretionary action regarding the landfill was made by the Zoning Board. As stated above, however, the Zoning Board's decision was not determinative of Pressley's entitlement to a LOC. Council acted within its

discretion in determining that Pressley's proposed landfill was not consistent with its local and/or regional plans. In addition, Pressley's remedy for the alleged wrongful denial was to seek judicial review of Council's decision. Accordingly, we find the trial court did not err in denying the petition for a writ of mandamus.

### 3. *The Commerce Clause*

Pressley argues the trial court erred in concluding Council did not discriminate against North Carolina waste producers in violation of the Commerce Clause of the United States Constitution. We disagree. The Commerce Clause limits the authority of the states to discriminate against interstate commerce. *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988). "The critical commerce clause inquiry is whether the practical effect of the regulation is to control conduct beyond boundaries of the state." *United Techs. v. South Carolina Second Injury Fund*, 318 S.C. 213, 218, 456 S.E.2d 901, 904 (1995) (quoting *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 109 S.Ct. 2491, 105 L.E.2d 275 (1989)).

Pressley estimated that at least 60 percent of the waste he handled would come from North Carolina. At the June 2, 1997 meeting, a Council member "pointed out that during the discussion [of Pressley's request at the previous meeting], 5 out of 7 members thought that most of the debris would be coming from North Carolina."

The trial court concluded Pressley's commerce clause argument was irrelevant because Pressley did not argue the Solid Waste Policy and Management Act was unconstitutional. Pressley again raised the issue in a Rule 59(e), SCRCP, motion. The trial court summarily denied the motion.[4]

Pressley admits he does not challenge the constitutionality of the Act. Rather, he argues Council's denial of his request

---

4. *See Coward Hund Constr. Co., Inc. v. Ball Corp.*, 336 S.C. 1, 4, 518 S.E.2d 56, 58 (Ct.App.1999)(citing James F. Flanagan, *South Carolina Civil Procedure* 475 (2d ed.1996) for the proposition that "[o]nce the issue has been properly raised by a Rule 59(e) motion, it appears that it is preserved and a second motion is not required if the trial court does not specifically rule on the issue so raised.").

for a LOC was unconstitutional based on Council's improper motive; ie., Council did not want to issue a permit to a landfill owner that would accept the majority of its waste from North Carolina.

A governmental body's decision on the use of land is a legislative function. *Hampton v. Richland County,* 292 S.C. 500, 357 S.E.2d 463 (Ct.App.1987). Judicial inquiry into legislative motivation is to be avoided. *South Carolina Educ. Ass'n v. Campbell,* 883 F.2d 1251 (4th Cir.1989). "Such inquiries endanger the separation of powers doctrine, representing a substantial judicial 'intrusion into the workings of other branches of government.'" *Id.* at 1257 (quoting *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 268 n. 18, 97 S.Ct. 555, 50 L.Ed.2d 450, (1977)).

The Act prohibits consideration of solid waste from jurisdictions outside the plan area in determining need. S.C.Code Ann. § 44–96–290(E)(Supp.1999). Council unquestionably considered Lancaster County's needs in denying Pressley's request. Thus, Council followed the dictates of the Act when making its decision. In light of Pressley's failure to challenge the constitutionality of the Act, we affirm the trial court's ruling that Pressley failed to prove a violation of the Commerce Clause arising from Council's underlying motives.

4. *Exhaustion of Administrative Remedies*

Pressley argues the trial court erred in holding he failed to exhaust his administrative remedies. We agree.

The trial court held Pressley had not exhausted his administrative remedies because DHEC had not ruled on his permit application and Pressley had not pursued a final ruling from DHEC. However, when Council refused to issue a LOC, the effect of DHEC's policy of delegating authority was to deny a request for a permit without further DHEC consideration. DHEC's refusal to accept Pressley's application without the LOC was an effective ruling on his application. Accordingly, it is unnecessary for Pressley to seek administrative review of Council's action. Pressley was entitled to seek judicial review of Council's decision. Although we find the trial court erred in this issue, this error does not affect our decision on Pressley's other issues.

Accordingly, the decision of the trial court is AFFIRMED AS MODIFIED.

CURETON, GOOLSBY and CONNOR, JJ., concur.