# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Horry Telephone Cooperative, Inc., Appellant,

v.

City of Georgetown, and the South Carolina Secretary of State, Respondents.

Appellate Case No. 2012-212185

———————

———————

Appeal from Georgetown County
Benjamin H. Culbertson, Circuit Court Judge

———————

Opinion No. 27394
Heard January 23, 2014 – Filed June 4, 2014

———————

**AFFIRMED**

———————

Dominic Allen Starr and Alan Grant Jones, both of McAngus, Goudelock, & Courie, LLC, of Myrtle Beach, for Appellant.

Douglas Charles Baxter, of Richardson Plowden & Robinson, PA, of Myrtle Beach, Andrew F. Lindemann, of Davidson & Lindemann, PA, of Columbia, for Respondent.

———————

**JUSTICE PLEICONES:** This issue on appeal is whether the City of Georgetown's denial of multiple franchise applications by Horry Telephone Cooperative Inc. to provide cable television was a violation of the South Carolina Competitive Cable Services Act (the Act), S.C. Code Ann. §§ 58-12-5 et seq. (Supp. 2013).[1] We hold that it was not.

## FACTS

Appellant, Horry Telephone Cooperative Inc. (HTC), is a telecommunications company providing services in the Georgetown and Horry County areas. In 2007, as required by the Act, HTC filed for a state-issued certificate of franchise authority, where it sought to provide cable television services in the City of Georgetown (City). The Secretary of State, pursuant to § 58-12-310, forwarded the notice of application to the City which was required to respond to the request within 65 days.[2]

The City first took up HTC's request during a city council meeting on November 29, 2007 and approved it. Since a franchise is granted by ordinance, a second reading approval was required. On second reading, the request was denied. The

---

[1] The purpose of the Act is to promote competition between cable providers in order to "relieve consumers of unnecessary costs and burdens," "encourage investment," and "promote deployment of innovative offerings that provide competitive choices for consumers."§ 58-12-5. To accomplish these goals, the General Assembly "streamlined policy framework providing statewide uniformity necessary. . .to allow these functionally equivalent services to compete fairly and deploy new consumer services more quickly." *Id.*

[2] Under the Act, the process for obtaining a franchise requires the applicant to send an application to the Secretary of State describing the political subdivision, municipality, or county to be served in whole or part by the applicant. § 58-12-310(B). Next, the Secretary of State forwards a notice of this application to the municipality or county described by the applicant. § 58-12-310(C). The municipality or county has 65 days to respond, and if the consent is denied or there is a failure to give unconditional consent to the franchise, the Secretary of State "shall deny the application," with regard to that municipality or county. § 58-12-310(D). If consent is given, the Secretary of State will issue the provider a certificate of franchise authority with respect to the consenting entity. § 58-12-310(D)-(E). Accordingly, the political subdivision ultimately determines whether the franchise is awarded.

City informed the Secretary of State of the denial, and notice was sent to HTC informing them that their franchise for the City of Georgetown had been denied.

HTC filed for reconsideration, which was ultimately denied. Finally, HTC applied for a third time, and after consideration, the application was tabled and subsequently failed.

HTC filed a declaratory judgment action in circuit court to declare that the City's denial was unlawful under the Act. The circuit court held a bench trial[3] and ruled that the Act did not create a private cause of action and the City's denial of HTC's consent request was a reasonable and valid exercise of legislative discretion. Consequently, the circuit court dismissed HTC's complaint with prejudice. This appeal followed.

## DISCUSSION

On appeal, the parties focus on two issues: first, whether the Act creates a private cause of action, and if so, whether the actions of the City were unreasonable in light of council members' testimony that their decisions to deny consent were at least partially based on a build-out[4] requirement and anti-competitive reasons in violation of the Act. We hold that the Act does create a cause of action, but we find that the record supports the circuit court's denial of HTC's requested relief.

1. **Does the South Carolina Competitive Cable Services Act create a private cause of action?**

HTC contends that the plain language of the Act creates a cause of action, such a reading furthers the purpose of the Act, and therefore, the circuit court erred in finding that the Act did not create a cause of action. We agree.

The Act lays out multiple purposes for its enactment, which consist of promoting competition, investment, development, and ultimately lowering costs for

---

[3] The Secretary of State stipulated and agreed to be bound by the declaratory and prospective relief issued by the circuit court and did not participate in the trial or this appeal.

[4] A build-out requirement forces the cable service provider to service all residents in a municipality rather than allowing the provider to determine how and where to offer such services. It creates a burdensome initial capital investment on any incoming cable provider thereby restricting competition, and it is expressly proscribed by the Act. S.C. Code Ann. § 58-12-350 (Supp. 2012).

consumers. *See* § 58-12-5. Additionally, the Act seeks to achieve these goals in multiple ways, including streamlining the process for granting franchises, requiring "cable and video franchises to be nonexclusive, and for requests for competitive cable or video franchises not to be unreasonably refused." *Id.*; S.C. Code Ann. § 58-12-300(5) (Supp. 2012).

> In the event of a denial of the application for a franchise, the Act provides:

> If the applicant takes the position that the denial of the application or amended application is actionable, it may seek any appropriate relief under state or federal law in state or federal court, and if the applicant takes the position that the denial of consent by the municipality or county is actionable, it may add the municipality or county denying consent as a party to such action.
> S.C. Code Ann. § 58-12-310(D) (Supp. 2012).

HTC argues this language unambiguously demonstrates that the General Assembly intended to create a right for cable providers to bring an action against a municipality when they believe their application has been denied in violation of the Act. We agree.

The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature. *Charleston Cnty. Sch. Dist. v. State Budget & Control Bd.,* 313 S.C. 1, 437 S.E.2d 6 (1993)). "What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000) (quoting Norman J. Singer, *Sutherland Statutory Construction* § 46.03 at 94 (5th ed.1992)). Whether the legislature intended to create a private cause of action for the violation of a statute is determined primarily by the language of the statute. *16 Jade Street, LLC v. R. Design Const. Co., LLC,* 405 S.C. 384, 389, 747 S.E.2d 770, 773 (2013).

The language of § 58-12-310(D) expressly provides that when the cable provider believes the municipality's denial of consent is actionable, it may bring an action against the municipality and that action may seek any appropriate remedy under state or federal law. Accordingly, we find that the Act does create a private cause of action for aggrieved cable providers.

2. **Did the circuit court err in finding that the denial of consent was reasonable?**

HTC argues it presented sufficient evidence that the City's refusal to grant consent violated the Act,[5] and therefore, the circuit court erred in holding that the City's actions were reasonable.

To support its argument, HTC relies almost exclusively on the trial testimony and depositions of individual city council members concerning their respective motivations for denying HTC's request. This testimony was improperly admitted over Respondents' objection. Testimony of individual council members as to their motivations for denying consent is not competent evidence. We have stated that in reviewing decisions of municipal governments, "[m]unicipal records properly authenticated or verified are the only competent evidence of the proceedings of the transactions of governing bodies." *Berkley Electric Cooperative, Inc. v. Town of Mount Pleasant*, 308 S.C. 205, 208, 417 S.E.2d 579, 581 (1992) (citing E. McQuillan, *The Law of Municipal Corporations* § 14.05 (3d 3. 1989). Accordingly, we do not consider the council members' testimonial evidence at trial.

Essentially, HTC's argument is that the individual members had motives for denying consent to the franchise agreement which were prohibited by the Act. This argument asks this Court to inquire into individual city council members' motives behind their legislative acts. *Whaley v. Dorchester County Zoning Bd. of Appeals*, 337 S.C. 568, 575, 524 S.E.2d 404, 408 (1999) ("A municipal ordinance is a legislative enactment. . ."). This is a fundamentally inappropriate inquiry for a court. *See Pressley v. Lancaster County,* 343 S.C. 696, 542 S.E.2d 366 (2001) ("Judicial inquiry into legislative motivation is to be avoided") (citation omitted); *Columbia Ry., Gas & Elec. Co. v. Carter,* 127 S.C. 473, 121 S.E. 377, 379 (1924) ("The court cannot speculate as to the intention, much less as to the motives, of the

---

[5] HTC contends the City denied its request because HTC would not satisfy a "build-out" requirement, and therefore, the denial violated the express prohibition against build-out requirements in § 58-12-350. In addition, HTC contends the denial was based on anticompetitive reasons, and thus conflicts with the purpose of the Act. Finally, HTC argues these improper bases render the City's denial of consent unreasonable, and requests this Court vacate the City's denial and issue an injunction requiring the City to grant HTC a franchise. This requested relief is fundamentally improper, as it would require this Court to compel a city council to enact an ordinance, which would consist of a violation of the separation of powers. *Foster v. Taylor*, 210 S.C. 324, 42 S.E.2d 531(1947) (discussing separation of powers, "[t]he court will, of course, not attempt to compel the legislature by mandamus to perform a legislative duty or function").

Legislature"); *Douglas v. City Council of Greenville,* 92 S.C. 374, 75 S.E. 687, 689 (1912)(discussing improper motives for passing an ordinance, "[w]e cannot inquire into the motives which induce legislative action"); *State v. Cardozo*, 5 S.C. 297 (1874) ("So far as it implies any wrong or improper motive on the part of the Legislature in the particular enactment, it is beyond the control of the judicial department.").

In any case, looking to the competent evidence, there were myriad reasons in this record for why the City denied consent beyond those complained of by HTC, including: the overburdening of infrastructure, concerns over drainage if existing cable infrastructure was to be expanded, as well as lack of tax revenue provided by HTC. While the competent evidence in the record is capable of conflicting inferences, there is evidence from which a fact finder could conclude that the reasons for denial of the application did not violate the proscriptions of the statue. In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judge's findings. *Townes Associates Ltd. v. City of Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976). Thus, we affirm the circuit court's decision denying HTC's requested relief.

**AFFIRMED.**

**TOAL, C.J., BEATTY, KITTREDGE and HEARN, JJ, concur.**